JOURNAL ENTRY AND OPINION
{¶ 1} Defendant Ricardo Wallace appeals from his conviction for four counts of gross sexual imposition. For the reasons set forth below, we affirm.
 {¶ 2} On January 4, 2005, defendant was indicted pursuant to a four-count indictment in connection with an alleged sexual assault on a young co-worker ("the victim"). Count One charged him with rape. Counts Two through Five charged him with gross sexual imposition, and Count Six charged him with kidnapping with a sexual motivation specification. Defendant pled not guilty and the matter proceeded to a jury trial on May 31, 2005.
 {¶ 3} For its case, the state presented the testimony of the victim, the victim's friend, Stephanie Florek, the victim's mother, Garfield Heights Police Officer Brian Cwiklinski and Det. Jon Cermak, and evidence analysts Melissa Zielaskiewicz and Sylvia Jo Gill.
 {¶ 4} The victim testified that she is a high school student. In 2004, she worked as a cashier at a restaurant. Defendant was a dishwasher at the same restaurant. According to the victim, defendant made flirtatious comments to her but she was not interested in him. On one particular night, defendant asked her for a ride home. She said that she could not drive him home but he persisted and told her that he lived near the restaurant. His shift ended earlier than hers and he offered to help her with her work if she would drive him home. The victim agreed and defendant provided directions as the victim drove, eventually directing her to an area near East 117th Street where the victim had never been.
 {¶ 5} The victim testified that while she was driving, defendant touched her thigh and groin area. He said that he wanted to see if she was wet and he grabbed her in the vaginal area. The victim was afraid and said nothing.
 {¶ 6} Defendant pointed out his house then told the victim to go to a one-way street, pull over and turn off the lights of the car. The victim complied because she was afraid and could not confront defendant. Defendant then reclined the seat of the car and put his hand through the girl's shirt. He then exposed his penis and began to masturbate.
 {¶ 7} The victim testified that defendant grabbed her hand and made her touch his penis. The victim pulled her hand away and said that she had to go and he became increasingly persistent, then took his hand and pushed her head toward his genitals while she resisted, became upset, and told him that she had to go home. He then pushed her head down forcibly and forced her mouth onto his penis. He ejaculated and told the victim to take him home.
 {¶ 8} The victim drove off and did not know the way home. She called her friend Stephanie and told her what had happened.
 {¶ 9} The victim made her way home and fled into the bathroom in tears. She spit into a paper cup and told her mother what had happened. They went to the police station later that night. Finally, the victim testified that, as a result of this matter, she receives counseling at the Rape Crisis Center.
 {¶ 10} The victim admitted that she was on anti-anxiety medication at the time of the incident but she stated she was subsequently put on a higher dosage. The victim stated that she was scared of defendant.
 {¶ 11} Stephanie Florek testified that the victim called her at around 10:00 p.m., and was crying hysterically and told her that she had given defendant a ride home and, while driving in an unfamiliar area of town, he touched her. She also told Stephanie that defendant forced her to perform oral sex on him and she did not know how to get back home. Stephanie told the victim to call her parents immediately.
 {¶ 12} The victim's mother testified that the victim was on the phone with Stephanie when she returned home. She was crying and proceeded immediately to the bathroom where she spit into a paper cup. The victim told her mother about the incident and her parents then took her to the police department and brought the paper cup for police examination.
 {¶ 13} Officer Cwiklinski took the cup and obtained a statement from the girl. Det. Cermak performed a follow-up examination. He obtained some clothing from the victim and also got a DNA sample from defendant. Det. Cermak sent the evidence to the Bureau of Criminal Identification in Richfield, Ohio.
 {¶ 14} Melissa Zielaskiewicz testified that the DNA profile of the contents of the paper cup was consistent with the victim. No male DNA was detected, but semen was detected on the cup and on pants provided to her from the police. Zielaskiewicz opined that the victim's DNA had "overpowered" a male source of potential DNA evidence so she suggested a Y-STR analysis[1]
of the evidence and she sent the evidence and the known sample from defendant to the Bode Technology Group for further analysis.
 {¶ 15} Sylvia Jo Gill of Bode Technology Group testified that she conducted the Y-STR analysis. According to Gill, defendant could not be excluded as the source for the DNA profile found in the cup, as this particular profile is found in 11 out of 4004 people and defendant's DNA profile is found in 5 out of 4004 people. Gill testified that she considered the profiles a match and that the DNA profiles were validated through the standards established by the Scientific Working Group on DNA Analysis Methods.
 {¶ 16} Defendant elected to present evidence. He testified on his own behalf and also presented the testimony of Stephanie Swiger.
 {¶ 17} Swiger testified that she has given defendant rides home and that she has never known him to be a threat in any way.
 {¶ 18} Defendant testified that the victim overheard him asking other co-workers for a ride home and offered to give him a ride, and he accepted and planned to give her gas money. Defendant claimed that as they drove, the victim asked if he could help her make some fast cash. According to defendant, the victim inquired about selling drugs, then offered to have sex with him but he felt uncomfortable and got out of the car. He did not know how his DNA could have gotten into the paper cup which the victim spat into upon arriving home.
 {¶ 19} Defendant was subsequently acquitted of the rape and kidnaping charges and convicted of all four counts of gross sexual imposition. The trial court sentenced defendant to a total of twelve months imprisonment and determined that he is a sexually oriented offender.
 {¶ 20} Defendant now appeals and assigns two errors for our review. Defendant's first assignment of error states:
 {¶ 21} "The state failed to present sufficient evidence to sustain a conviction."
 {¶ 22} "`Sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v. Thompkins,78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id.
 {¶ 23} The elements of gross sexual imposition are set forth in R.C. 2907.05 which provides in relevant part as follows:
 {¶ 24} "(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; * * * when any of the following applies:
 {¶ 25} "(1) The offender purposely compels the other person, or one of the other persons, to submit by force or threat of force."
 {¶ 26} "Sexual contact" is defined as any touching of an erogenous zone of another, including, but not limited to, the genitals, buttock, breast (if female), or pubic region. See R.C.2907.01(B).
 {¶ 27} Pursuant to R.C. 2901.01(A), "force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." A defendant purposely compels his victim to submit by force or threat of force when he uses physical force against the victim, or creates the belief that physical force will be used if the victim does not submit. State v. Schaim, 65 Ohio St.3d 51, 55, 1992-Ohio-31, 600 N.E.2d 661. Force has been established where the defendant used force and threat of force by bringing about a feeling of fear and terror and placing her within his power and control such that her will was overcome throughout the sexual encounter. See State v. Hurst (March 7, 2000), Franklin App. No. 98AP-1549.
 {¶ 28} In this matter, we conclude that the testimony, viewed in a light most favorable to the state, provided sufficient evidence to support the gross sexual imposition convictions. The victim testified that the defendant instructed her to drive to an area that she did not know, made repeated sexual advances and touched her vaginal area and breasts. He then exposed his penis, began to masturbate, grabbed her hand and made her touch his penis. He became increasingly persistent and upset, forceful and angry as she resisted. He then pushed her head toward his penis, continuing even as she cried and resisted, then pushed her head down more forcibly until she could no longer resist the force and his penis went into her mouth. We conclude that this evidence would convince the average mind of the defendant's guilt of the charges beyond a reasonable doubt. This assignment of error is without merit.
 {¶ 29} Defendant's second assignment of error states:
 {¶ 30} "Defendant's conviction is against the manifest weight of the evidence."
 {¶ 31} In State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541, the court illuminated its test for manifest weight of the evidence as follows:
 {¶ 32} "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.' It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." Black's [Law Dictionary (6 Ed. 1990)], at 1594.
 {¶ 33} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "`thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. Id., citing Tibbs v. Florida (1982), 457 U.S. 31,45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717, 720-721.
 {¶ 34} The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id.
 {¶ 35} In this matter, we cannot conclude that the jury lost its way in convicting defendant of the instant offenses. The victim testified that defendant repeatedly groped her as he ordered her to drive through the unfamiliar area, and forced her head to his penis as she cried and resisted. The victim also testified that she spit into a paper cup when she arrived home. The girl's best friend testified that the victim called her immediately afterward and was crying hysterically, and the girl's mother also established that the victim was extremely upset upon arriving home. This evidence corroborated the testimony of the girl, as did DNA evidence obtained from the cup. Defendant claimed that the victim offered to sell drugs or perform a sexual act for money then left the car. He denied that any sexual contact occurred, but had no explanation as to why his DNA was in the paper cup that the victim spat into upon arriving home. Defendant's testimony was implausible and inconsistent with the physical evidence obtained in this matter.
 {¶ 36} This assignment of error is without merit. Affirmed.
It is ordered that appellee recover of appellant the costs herein taxed.
The Court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., J., AND COLLEEN CONWAY COONEY, J.,CONCUR.
[1] The full name of this analysis is the Short Tandem Repeat loci specific to the male Y chromosome.