OPINION *Page 2 
{¶ 1} Defendant-appellant Forrest Rupp appeals from his rape conviction entered in the Mahoning County Common Pleas after a jury trial. He raises sufficiency of the evidence and jury instruction issues concerning the element of force or threat of force. He contends his right to a speedy trial was violated. He also raises allegations regarding other acts evidence, hearsay evidence and prosecutorial misconduct. For the following reasons, the judgment of the trial court is affirmed.
 STATEMENT OF FACTS {¶ 2} On June 17, 2004, appellant was indicted for two counts of rape in violation of R.C. 2907.02(A)(2), which entails engaging in sexual conduct with another by purposely compelling the other to submit by force or threat of force. The indictment alleged that he raped Donielle Fox on March 18, 2004 in Austintown, Ohio.
 {¶ 3} On the morning of the trial scheduled for September 29, 2004, appellant filed a speedy trial dismissal motion. He claimed that the time spent in jail since his March 25, 2004 arrest for a parole violation should count toward his speedy trial time because the rape allegations were the reason for his arrest, and he urged that he is entitled to triple time. The state countered that there was no "arrest" on this case for purposes of speedy trial until the indictment was served and that he is not entitled to triple time due to the parole holder.
 {¶ 4} After various continuances and counsel's withdrawal, the motion was finally heard on April 5, 2005. Leave was then given to supplement the motion. On May 12, 2005, the court issued its decision denying appellant's dismissal motion. The court found that appellant was arrested for a parole violation by the Adult Parole Authority [APA] and that a hold was placed upon him thereafter. The court concluded that triple time does not run when a defendant is held on a parole or probation holder.
 {¶ 5} On August 22, 2005, the jury trial commenced. Twenty-three-year-old Donielle Fox testified that she was studying at the house of her classmate from Trumbull Business College, Amy Smiley. Amy lived on the west side of Youngstown with her two young children. Donielle had her eight-month-old daughter with her. Donielle testified that Amy told her that appellant was on his way over, that he was a lady's man and that she should stay away from him. When appellant arrived, Donielle *Page 3 
observed that he was nice and good-looking. (Tr. 315). They showed each other their tattoos. (Tr. 318).
 {¶ 6} When Amy's babysitter fell through, appellant volunteered to go to Wal-Mart with Donielle and her daughter. (Tr. 318). Donielle followed appellant to his sister's apartment in Austintown where he dropped off his vehicle. Donielle admitted that she let appellant kiss her while sitting on a swing at Wal-Mart; however, when he put his hand on her knee, she removed it and advised him that she "was not like that." (Tr. 325, 372). Appellant then revealed various troubling facts about his life that made her so afraid of him that she was tempted to run away from him at the store. (Tr. 326, 372-373).
 {¶ 7} For instance, he told her that he was on parole for helping Martin Kolisar (the well-known shooter of a bar patron and murderer of a Youngstown police officer) elude the police during the national manhunt. (Tr. 323) Furthermore, he disclosed that he had been in prison for shooting a convenience store clerk, that he was not sorry for doing it and that he would do it again. (Tr. 323, 325-326). Donielle also noted that when her vehicle passed a police officer, appellant acted nervous and hurriedly put on his seatbelt. (Tr. 329).
 {¶ 8} When she pulled into the apartment complex to drop appellant off, he continually put his hand on her leg despite her repeatedly pushing it away and telling him that she was "not like that" and that she did not want to "do anything." (Tr. 330-333). She opined that it should have been understood from her actions and protestations that she did not consent to further gropings. (Tr. 334).
 {¶ 9} Donielle stated that appellant then put his hands up her shirt, but she removed his hands. (Tr. 334). She could not remember if he said anything besides asking her if he could "touch me just once" to which she responded, "no." (Tr. 335). When he started unbuttoning her clothes, she again removed his hands. However, he proceeded to put his hand down her pants. (Tr. 336-337).
 {¶ 10} The defense notes that Donielle was 5'7" tall and weighed 170 pounds apparently in response to any suggestion that appellant could have lifted her over the console between bucket seats. (Tr. 338). However, Donielle admitted that she first pushed appellant away when he grabbed her ribs and attempted to pull her over the console, but she soon complied when he asked her to get on top of him. She complied because she feared what appellant would do to her due to his *Page 4 
contemporaneous statements about his violent past and due to his refusal to abide by her physical and verbal protestations. (Tr. 339, 424-425, 428, 449-450). She also testified that appellant is taller and stronger than her, which the jury could judge for themselves as well. (Tr. 338). She ended up sitting on his lap where he removed her pants in spite of her stop commands and pushing. (Tr. 339-340).
 {¶ 11} Appellant then switched their positions, putting her on the bottom with the seat reclined so far that her head was almost touching the baby's car seat. (Tr. 340-341, 424). She disclosed that she did not yell because she did not want to wake her baby and did not want her baby to see her being raped. (Tr. 336-337, 378, 428). She testified that he did not expressly threaten her at any time during the incident. (Tr. 377, 450). However, she was in fear of aggressively fighting him. She attested that she did not kick, hit or use any physical violence because she was afraid of what appellant would do to her. (Tr. 334, 338-339, 346, 403). Donielle stated, however, that throughout the encounter, she tried to push appellant away from her and repeatedly pulled back and said no and stop to his advances. (Tr. 331-342, 403, 427).
 {¶ 12} Still, appellant pulled his pants down and engaged in vaginal intercourse with her. She disclosed that when he put his penis in her vagina, she again asked him to stop. (Tr. 341). She did not kiss him back during the sex act. (Tr. 342). Donielle started crying and was visibly upset. When appellant stopped, she told him that he made her "feel like whore." He responded that it would be okay, and he moved to the driver's seat. She was unsure if he ejaculated. (Tr. 342).
 {¶ 13} Donielle then testified that appellant pulled her roughly by the back of the neck and pushed her head down so she would perform oral sex on him. (Tr. 343-344). She asked him to stop to no avail. (Tr. 344). She unwillingly performed oral sex on him for two to five minutes. (Tr. 345, 445). He did not ejaculate. He then instructed her to kiss his tattooed penis goodbye. (Tr. 345).
 {¶ 14} Donielle testified that she did not call the police because she was afraid that appellant would come after Amy and Amy's children. This belief was induced by arguments that occurred between appellant and Amy that night after appellant followed Donielle, called her, instructed her to pull over, yelled at her for crying on the phone to Amy, grabbed the phone off her and followed her again. (Tr. 348-358). She stated that appellant indirectly threatened her about going to the police. (Tr. 430-431). *Page 5 
 {¶ 15} The incident occurred late Thursday night. On Saturday, Donielle received a telephone call at work from someone named Kim claiming to be appellant's parole officer. (Tr. 359-360). This person advised that appellant informed her of the allegations. This person asked why Donielle did not scream or yell if the encounter was not consensual. (Tr. 361). Donielle called the APA on Monday and asked for appellant's parole officer named Kim. She was connected with appellant's actual parole officer, a man named John Granger. (Tr. 362). She eventually told him her story, which started the investigation in this case.
 {¶ 16} On Tuesday, Donielle went to the emergency room. On Wednesday, the parole officer took her statement in person. On Thursday, the parole officer arrested appellant, and Donielle gave a statement to the Austintown police. It was brought out at trial that none of her statements mentioned that appellant told her about his past. (Tr. 417). She denied that she learned about his past from Amy prior to leaving the house with appellant. (Tr. 453).
 {¶ 17} However, Amy put in her statement and testified for the state that she told Donielle what she knew about appellant before he arrived at her house that evening. (Tr. 477). She thought that she disclosed appellant's criminal past and his lack of respect for women in that he tries to have sex with everyone. (Tr. 480, 500). Amy testified that she begged Donielle not to go with appellant and opined that Donielle was very naive. (Tr. 480). Amy then related that when Donielle arrived back at her house, she was crying and stating that appellant would not get off of her despite her telling him no. (Tr. 490-491).
 {¶ 18} Lastly, appellant's parole officer testified as to how he received the phone call from Donielle and how he took her statement. (Tr. 523-527). He revealed that he arrested appellant because the allegations constituted a parole violation. (Tr. 528). He also said that he encouraged Donielle to go to the police and that she was willing to testify at the parole violation hearings. (Tr. 528-529).
 {¶ 19} In closing, the state urged that appellant should be convicted of two counts of rape, one for the vaginal penetration and one for the oral sex. (Tr. 544). The state also urged that the essential question was whether appellant overcame Donielle's will by fear or duress from which they could infer a threat of force, and the court instructed accordingly. (Tr. 597). The defense objected to this instruction. *Page 6 
 {¶ 20} On August 26, 2005, the jury returned a guilty verdict on count two but could not come to an agreement on count one. Thus, a conviction was entered on count two, and a mistrial was declared on count one. (The retrial on that count has apparently been stayed pending our decision in this case.) On August 30, 2005, appellant was then sentenced to ten years in prison and labeled a sexually oriented offender.
 {¶ 21} Appellant filed timely notice of appeal from that judgment entry. The contentions within appellant's first and second assignments of error revolve around the element of force or threat of force in the context of sufficiency and jury instructions respectively. We shall begin with the issue of the jury instructions raised in assignment of error number two, in order to set forth the proper law before proceeding with sufficiency of the evidence.
 ASSIGNMENT OF ERROR NUMBER TWO {¶ 22} Appellant's second assignment of error provides:
 {¶ 23} "APPELLANT WAS DENIED DUE PROCESS, A FAIR TRIAL AND THE LIBERTIES SECURED BY THE UNITED STATES CONSTITUTION AMEND. V XIV AND OHIO CONST. ART. I, §§ 10 AND 16 WHEN THE TRIAL COURT GAVE A JURY INSTRUCTION WHICH ELIMINATED THE STATE'S OBLIGATION TO PROVE EACH ELEMENT OF THE OFFENSE OF RAPE."
 {¶ 24} Upon the state's prompting, the trial court added the following after the statutory definition of force: "If the state proves beyond a reasonable doubt that the defendant overcame the victim's will by fear or duress, you may infer from those facts the element of force." (Tr. 591). The defense objected to this instruction. (Tr. 597). Appellant claims that this instruction is only proper in cases where the defendant occupied a position of authority over a child or other susceptible party and notes that it is contained in Ohio Jury Instructions only in the rape section defining the position of authority over a child. Appellant concludes that if we agree that the instruction is inapplicable to cases of adults without any special relationship, then the state's verdict cannot be upheld as the instruction relieved the state of its burden of proving the element of force or threat of force.
 {¶ 25} The state points to a Ninth District case, which held:
 {¶ 26} "It is a well-known rule that, while consent negatives rape, where a woman is affected by terror or is in fear of great bodily injury and harm, brought into *Page 7 
being by an accused, who has placed his victim within his power and control, intercourse under such circumstances without consent is rape, even though the victim might have used greater physical resistance or cried out, when it is shown that her will was overcome by the fear or duress." State v. Martin (1946), 77 Ohio App. 553, 554
(involving an adult victim).
 {¶ 27} As a matter of fact, after stating: "As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established," the Ohio Supreme Court utilized a quotation containing a cite to this Martin case. State v. Eskridge
(1988), 38 Ohio St.3d 56, 59, quoting State v. Fowler (1985),27 Ohio App.3d 149, 154.
 {¶ 28} Appellant distinguishes Eskridge because it dealt with a four-year-old child being raped by her father. The Court concluded: "Eskridge was the victim's father and, at the time of the rape, was babysitting her. He therefore held a position of authority over her which did not require any explicit threats or displays of force." Id. The Court therefore found an implicit threat in a parent's command to a child of tender years. Id. at syllabus ¶ 1. Still, the Court's statement regarding overcoming the victim's will was not specified to apply only to position of authority over children cases. It was set forth as general law.
 {¶ 29} In a later case relied upon by appellant, the Supreme Court refused to apply the Eskridge assumption of force or threat of force to the case of a twenty-year-old daughter who had sex with her father where there was a pattern of incest from years past. State v. Schaim (1992),65 Ohio St.3d 51. The Court found that the implicit threat ofpunishment (including disciplinary measures other than force) does not apply to an adult child. Id. at 55. The Court, however, declared:
 {¶ 30} "A defendant purposely compels another to submit to sexual conduct by force or threat of force if the defendant uses physical force against that person, or creates the belief that physical force will be used if the victim does not submit. A threat of force can be inferred from the circumstances surrounding sexual conduct, but a pattern of incest will not substitute for the element of force where the state introduces no evidence that an adult victim believed that the defendant might use physical force against her." Id.
 {¶ 31} The Court essentially held three things: (1) the almost automatic finding of force or threat of force for children who are raped by those in a position of authority *Page 8 
over them does not apply to adults; (2) yet, even in the case of anadult victim, a threat of force can be inferred from the circumstances ifthe defendant somehow purposefully caused the victim to believe he woulduse force against her; (3) but, mere past incest does not establish a threat of force where the victim does not testify that she was in fear of physical force. Thus, the Schaim case cited by appellant is contrary to his current position.
 {¶ 32} Appellant's argument fails to distinguish between the finding of force or threat of force for cases of children raped by those in authority positions due to fear of discipline and the mere ability of a jury to infer a threat of force in all cases where the victim's will is overcome by fear or duress even where no express, direct threat of force is made. That is, in the case of a young child and a parent, the state need not even prove the victim's will was overcome by fear or duress. Rather, such fact can be presumed.
 {¶ 33} Conversely, in other types of rape cases, the state must prove force or threat of force either through direct evidence of such or by inference where the defendant overcame the victim's will by fear and duress. Thus, if the defendant created the belief that physical force will be used in the absence of submission, then threat of force can be inferred. Nothing in the rape statute requires the threat of force to be direct or express. Thus, threat of force includes both explicit and implicit threats.
 {¶ 34} Appellant relies on an appellate case which mentioned that force cannot be inferred in a case where the victim is an adult.State v. Rodriguez, 8th Dist. No. 82265, 2003-Ohio-7056, ¶ 27. However, that case is both confusing and internally inconsistent. For instance, that case first cited Schaim for the proposition that force or threat of force can be established when the defendant merely "creates the belief" that physical force will be used if the victim does not submit. Id. at ¶ 23. That court also cited Schaim for the proposition that the element of force can be inferred from the circumstances surrounding the sexual conduct and is established if it is shown that the victim's will was overcome by fear or duress. Id. However, the court then set forth a case review and stated that there can be no inference as the victim was an adult. Id. at ¶ 27. In yet another twist, the court concluded by declaring: "In the absence of proof, either direct or by inference, that Rodriguez purposely forced [the complainant] to submit to sexual conduct, we must conclude the State has failed to prove an essential element of its case." Id. at ¶ 37 (emphasis added). *Page 9 
 {¶ 35} Thus, the Rodriguez court in fact ended up holding that proofby inference would have been sufficient. We also note that the Eighth District has later cases that supplant any part of the internally inconsistent Rodriguez holding relied upon by appellant herein. See, e.g., State v. Wallace, 8th Dist. No. 86794, 2006-Ohio-2735, ¶ 27 (using the rule of law on overcoming victim's will in cases not involving position of authority).
 {¶ 36} Moreover, other appellate cases have unhesitatingly applied the law set forth in the disputed jury instruction here to cases where there was no position of authority over a child. See, e.g., State v.Pordash, 9th Dist. No. 04CA8480, 2004-Ohio-6081, ¶ 12 (dealing with chiropractor raping patients); State v. Worrell, 10th Dist. No. 04AP-410, 2005-Ohio-1521, ¶ 43 (dealing with husband raping wife). Appellant attempts to distinguish Pordash (and would likely try to distinguish Worrell as well) by claiming they are position of authority cases. He also attempts to distinguish the Martin case quoted above and cited in Eskridge, by stating the defendant in Martin was masquerading as a uniformed police officer and thus occupied a position of authority.
 {¶ 37} However, the Martin court did not rely on the position of authority doctrine. Rather, the fact that the defendant pretended to be a police officer was just treated as a relevant consideration in determining whether the defendant overcame the victim's will by fear or duress. Moreover, the Pordash Court specifically stated that the mere doctor-patient relationship does not create an inference. Thus, the Ninth District made it clear that they did not rely on position of authority. Furthermore, position of authority exists as part of the test for rape cases involving children; position of authority is not a stand alone rule. See State v. Dye (1998), 82 Ohio St.3d 323 (nine-year-old raped by babysitter); Schaim, 65 Ohio St.3d 51 (refusal to extend to doctrine to twenty-year old with incestuous past with defendant-father);Eskridge, 38 Ohio St.3d 56 (four-year-old raped by father). Thus, appellant's distinctions of the appellate cases we rely on here are not valid.
 {¶ 38} This is just a sampling of the case law. We have found other cases that upheld the disputed rule of law on overcoming the victim's will in cases where there was no indication of a position of authority. See, e.g., Wallace, 8th Dist. No. 86794 at ¶ 27 (dealing with gross sexual imposition, which involves sexual contact, but which also requires force or threat of force); State v. Edgington, 4th Dist. No. 05CA2866, *Page 10 2006-Ohio-3712, ¶ 11 (citing Schaim and Eskridge
for its holding that force or threat of force can be inferred from conduct of the defendant that overcame the victim's will by fear or duress in cases other than those involving a defendant in a position of authority); State v. Arias, 9th Dist. No. 04CA008428,2004-Ohio-4443.
 {¶ 39} The latter is a case on point. See id. In Arias, the defendant once told the victim that he had previously strangled a woman to death and then suffocated someone while in prison. Id. at ¶ 10. On a different day, while visiting her, he pushed her back on the couch, removed her shorts, performed oral sex on her and inserted two fingers into her vagina. Id. at ¶ 11. She stated that she tried to shut her legs or push him back, but she was afraid to struggle too much because of the criminal past he had revealed to her. Id. at ¶ 12.
 {¶ 40} The Ninth District Court of Appeals found sufficient evidence of force or threat of force after holding that force may be established by testimony that the defendant purposely compelled the victim by overcoming her will by fear. Id. at ¶ 32. They determined the force can be established by a victim's testimony that she feared retaliation if she did not engage in sexual conduct where testimony also showed that he previously instilled fear in the victim with stories of violence. Id. Thus, it is up to the jury to determine if they believe that it was the defendant's intent to instill fear through his stories and also to determine if they believe that the victim was in fact instilled with such fear that she could not exercise her will. See id.
 {¶ 41} We reiterate that the court's instruction here did not allow the jury to convict based merely upon the victim's subjective state of mind. Rather, before a threat of force could be inferred, the instruction required the jury to find beyond a reasonable doubt that the defendant acted to overcome the victim's will by fear or duress. Additionally, the defendant had to have purposefully compelled the victim. In order for a defendant to overcome his victim's will by fear or duress, the defendant would have had to engage in sufficient behavior toward the victim. This behavior is objective and its effect is viewed in light of the totality of facts and circumstances existing at the time of the alleged rape.
 {¶ 42} As will be discussed further, a victim need not risk physical damage or even death to later prove that she was raped. The rape statute itself specifically states that physical resistance is unnecessary. R.C.2907.02. By way of explanation, take for instance, the case of the woman who wakes up in the middle of the night to find a *Page 11 
stranger leering over her about to rape her. If she just lays there after saying "please don't," has she not been raped merely because she wanted it over with rather than trying to risk her physical integrity and her life by fighting off this seemingly menacing and unknown entity? SeeState v. Hurst (Mar. 7, 2000), 10th Dist. No. 98AP-1549. TheHurst court relied on the inference of force in order to uphold multiple counts of rape in this exact scenario. Id. Except there, the woman there did not even say no or stop; rather, she merely asked if the intruder was going to hurt her to which the intruder responded that he would not hurt her. Id.
 {¶ 43} The answer to the aforementioned question is that force or threat of force can be inferred where the defendant purposely compelled the victim to submit by employing certain objective actions that can be found to have overcome the will of the victim by fear or duress. The state labels this an umbrella of force with purposeful overtures of violence. The result is in accordance with the Schaim holding, which generally stated in a case specifically addressing an adult victim that there can be an inference of force where the defendant caused a victim to believe force would be used in the absence of submission. See, also,State v. Labus (1921), 102 Ohio St. 36, 38-39 (force is a relative term depending on the particulars of the case, which can include fright and intimidation as well as threats). This is also in line with various holdings from the Fourth, Eighth, Ninth and Tenth Districts. For all the foregoing reasons, the jury instruction is upheld as an accurate statement of the law regarding force or threat of force.
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 44} Appellant's first assignment of error, which we are discussing second, provides:
 {¶ 45} "APPELLANT WAS DENIED DUE PROCESS AND THE LIBERTIES SECURED BY THE UNITED STATES CONSTITUTION AND OHIO CONST. ART. I, §§ 1, 2, 10 AND 16
WHEN HE WAS CONVICTED OF THE OFFENSE OF RAPE UPON INSUFFICIENT EVIDENCE."
 {¶ 46} Appellant takes issue with the sufficiency of the evidence on the element of force or threat of force. Sufficiency of the evidence deals with adequacy rather than weight of the evidence. State v.Thompkins (1997), 78 Ohio St.3d 380, 386. Thus, in a review of the sufficiency of the evidence, the court does not engage in a determination of the witnesses' credibility. State v. Goff (1998),82 Ohio St.3d 123, *Page 12 
139. For instance, whether Donielle knew about the specifics of appellant's past from Amy before leaving with appellant and whether appellant told her about his past before or after she let him kiss her are credibility issues, not sufficiency issues. It is only sufficiency we are dealing with here.
 {¶ 47} Upon reviewing the sufficiency of the evidence, a conviction will not be reversed unless the reviewing court holds that no rational trier of fact could have found that the elements of the offense were proven beyond a reasonable doubt. Id. at 138. In conducting this review, we must view the evidence in the light most favorable to the prosecution. We now turn to the relevant elements herein.
 {¶ 48} Rape is a first degree felony. R.C. 2907.02(B). The elements of appellant's rape charge are: engaging in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force. R.C. 2907.02(A)(2). The sexual conduct alleged here includes both vaginal intercourse and oral sex. See R.C. 2907.01(A).
 {¶ 49} Force means any violence, compulsion, or constraint physically exerted by any means upon or against a person. R.C. 2901.01(A). It has been stated that the amount of force necessary is not fixed, but rather, depends upon various factors including the age, size and strength of the parties and their relation to each other. State v. Dye (1998),82 Ohio St.3d 323, 326, 328, citing State v. Eskridge (1988), 38 Ohio St.3d 56,58. Thus, force is a relative term, which depends upon the totality of circumstances in a certain case. State v. Labus (1921), 102 Ohio St. 36,38-39 (applying the sliding scale to a case of twelve year old and her father). As set forth supra, these circumstances may involve physical restraint, threats or mere purposeful fright and intimidation. See id.
 {¶ 50} There are various appellate cases holding that the element of force is satisfied where the defendant removes the victim's clothes after being told to stop. See, e.g., State v. Edgington, 4th Dist. No. 05CA2866, 2006-Ohio-3712, ¶ 11-16 (finding sufficient evidence of force due to defendant pulling victim's pants down after victim told him stop and tried to pull them back up); State v. Whitt, 8th Dist. No. 82293,2003-Ohio-5934, ¶ 22 (victim's testimony that defendant removed her dress and underwear without her consent is sufficient evidence of force or threat of force). See, also, State v. Shannon, 11th Dist. Nos. 2002-L-007, 2002-Ohio-008, 2004-Ohio-1669, ¶ 95 (defendant physically constrained the victim by laying on top of her, continued to *Page 13 
remain on top of her after she expressed her disinterest, and proceeded to engage in sexual intercourse with her without consent).
 {¶ 51} As aforementioned, besides force, threat of force can constitute rape. Donielle agreed that appellant did not directly threaten to use force upon her or her daughter. (Tr. 450). As set forth above, there is no requirement that the threat is explicit. See R.C.2907.02. Rather, it can be implicit. Likewise, threat of force can be inferred if a rational juror could construe the defendant's objective actions as being performed in order to overcome the victim's will by fear or duress. See prior assignment of error for full analysis and authorities in support.
 {¶ 52} Donielle testified that she was in fear of appellant and what he would do to her if she resisted due to his recent revelation of his disturbing criminal past combined with his perpetual advancement upon her without heeding her commands to stop or her physical attempts to stop him. His stories of shooting a store clerk in the head without remorse, helping his cop-killer friend to escape a national man-hunt and getting released on parole were made to Donielle in the confines of her car within minutes of the sexual advances.
 {¶ 53} Although appellant's arguments here mainly rely on his belief that the jury's verdict was based wholly on the inference instruction, there is evidence of actual force in this case as well. That is, Donielle testified that she said no and ordered him to stop multiple times. She told him that she "was not like that." She pushed him and his hands away repeatedly. She pulled away from him when he groped and grabbed her. She asked him not to remove her pants. She asked him to stop when he put his penis in her vagina. Construing the evidence in the light most favorable to the state, a rational juror could find that appellant used force to avoid and push back against Donielle's repeated acts of pushing him away and he used force to counter her attempt to pull herself away.
 {¶ 54} Appellant concludes that the sex was consensual because Donielle got on top of him after he told her to do so. (Tr. 424-425). She disclosed that she complied because he had grabbed her rib cage and was attempting to pull her over the console. She also revealed that she only complied with his instruction due to the fear she was experiencing as a result of his physically ignoring her expressed wishes and due to his stories of involvement in grave violence. She explained that she continued telling him no and pushing his hands away from her pants. (Tr. 336-337, *Page 14 
341, 403). Moreover, it is noteworthy that they were clothed at this point and her act of moving to his lap would not constitute per se consent to sex especially considering the other factors relevant to this particular case.
 {¶ 55} The rape statute specifically states that a victim need not prove physical resistance to the offender. R.C. 2907.02(C). Thus, although her lack of violence in warding off appellant was relevant, it was not case-shattering. Additionally, Donielle was not required to exit her vehicle to escape, especially where her baby was strapped into a car seat in the back seat. Although Donielle was not the most compelling or forthcoming victim-witness, after viewing the evidence in the light most favorable to the state, some reasonable juror could find that she did not consent to sex and that some force was used to purposely compel her to engage in vaginal intercourse. Furthermore, a rational juror could find that threat of force was inferred due to objectively quantifiable behavior of appellant which overcame the victim's will by fear or duress. Either way, there was sufficient evidence of compulsion exercised against Donielle in the vaginal rape.
 {¶ 56} There was also sufficient evidence of the oral rape. Specifically, Donielle testified that after the vaginal rape, she was crying as he stayed on top of her for a couple minutes. She told him that he made her "feel like a whore." (Tr. 342). Appellant told her it would be "okay" and moved over to the driver's seat. Despite her statement and her crying, he roughly pushed her head down to his penis by the back of her neck. (Tr. 343). She told him to stop to no avail. (Tr. 344). Construed in the light most favorable to the state, a reasonable juror could determine that appellant exerted physical force against Donielle regarding the oral rape.
 {¶ 57} Lastly, appellant complains that it is indeterminable which rape charge the jury convicted him of because neither the instructions nor the verdicts state which count was for vaginal rape and which count was for oral rape. (Tr. 588-589, 591). Similarly, the indictment did not specify which count was for which act. This results in a very strange and confusing situation. For the purpose of the instant appeal, however, there is not a problem. That is, the record provides sufficient evidence for both vaginal and oral rape. Thus, the effect of a verdict on only one of two unidentified rape counts is irrelevant here.
 ASSIGNMENT OF ERROR NUMBER THREE {¶ 58} Appellant's third assignment of error alleges: *Page 15 
 {¶ 59} "THE TRIAL COURT ERRED IN ADMITTING 'OTHER ACTS' EVIDENCE WHICH DENIED APPELLANT A FAIR TRIAL, UNDERMINED THE PRESUMPTION OF INNOCENCE AND DENIES DUE PROCESS, IN VIOLATION OF * * * [THE CONSTITUTION] AND OHIO EVID.R. 404(B)."
 {¶ 60} Appellant complains that the following information constituted inadmissible other acts evidence or that the probative value was substantially outweighed by the danger of unfair prejudice: he helped Martin Kolisar hide from police; he was involved in the shooting of a convenience store clerk; he was on parole, which is also encompassed in his complaint concerning his parole officer's testimony in general and specifically on him violating parole due to the rape allegations. He also contends that the parole officer's testimony was irrelevant.
 {¶ 61} Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Evid.R. 401. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, or confusion of the issues, or of misleading the jury. Evid.R. 403(A).
 {¶ 62} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B).
 {¶ 63} "In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant." R.C. 2945.59.
 {¶ 64} The standard for admitting evidence of other acts is not whether the evidence is necessary to prove an element of the offense.State v. Crotts, 104 Ohio St.3d 432, 2004-Ohio-6550, ¶ 19. Rather, the issue is merely whether the evidence *Page 16 
"tends to show" any of those things enumerated in the rule or statute. Id. Evidence establishing intent, plan, scheme or any of the other exceptions "is always material because it tends to show why one version of events should be believed over another." Id. at ¶ 20. We also note here that it is well established that the admission or exclusion of evidence rests within the sound discretion of the trial court. Statev. Robb (2000), 88 Ohio St.3d 59, 68.
 {¶ 65} Here, Donielle testified that appellant told her that he helped Kolisar elude police after Kolisar murdered a Youngstown Police Officer, causing a high-profile manhunt. He told her that he shot a convenience store clerk in the head and revealed that he did not regret it and would do it again. He also disclosed that he was on parole and had been in prison. She testified that she was in fear of appellant due to these statements and due to his advancement upon her without heeding her commands to stop or her physical attempts to stop him.
 {¶ 66} The relation of these stories to Donielle tends to show appellant's intent to act to overcome Donielle's will by fear and duress. Furthermore, appellant's statements tend to show hisintent to place Donielle in a state of fear and make her fearful of rejecting him more physically or in a louder manner. They also provideopportunity for him to advance upon Donielle without any extreme resistance. Finally, disclosure of his prior bad acts to the victim establishes a plan or scheme to affect the victim's state of mind as they are part of the immediate background of this offense. See State v.Curry (1975), 43 Ohio St.2d 66, 73. Contrary to appellant's contention, the prior acts need not be similar to show plan or scheme where they are part of the background and are inextricably linked with the current offense. Id. (categorizing two types of scheme, plan or system evidence). Accordingly, the stories appellant told Donielle were admissible as exceptions to the other acts prohibition.
 {¶ 67} Although the stories are prejudicial, they are not unfairly prejudicial. Rather, they are stories spouted directly from appellant's mouth to the victim within minutes (or at least less than an hour) before the sexual conduct. See Evid.R. 801(D)(2) (statement by a party-opponent). All state's evidence is meant to be prejudicial.Crotts at ¶ 107. This evidence is not merely relevant; it is foundational evidence that bolsters the victim's claims and establishes appellant's preparation, intent, plan and scheme. Here, given the circumstances of the case, unfair prejudice is not apparent. Additionally, as the state points out, a limiting instruction was given to *Page 17 
minimize any prejudicial impact of the evidence. (Tr. 587). See Statev. Bey (1999), 85 Ohio St.3d 487, 491. As such, these arguments are without merit.
 {¶ 68} His next contention concerns allowing the parole officer to testify and certain testimony presented by this parole officer. Initially, we must point out that defense counsel agreed that the parole officer could testify; he just argued that the jury should not be informed what kind of officer he is or for whom he works. (Tr. 282-283). We also note that certain aspects of this argument tie in with the next assignment of error dealing with how this parole officer came to play a role in the initiation of this investigation.
 {¶ 69} The mere fact that the parole officer testified is inconsequential considering the fact that Donielle already testified that appellant revealed to her that he was on parole and the reason therefor. Regardless, the parole officer was the first official responding to Donielle's complaint, and his testimony was important background testimony as to how the investigation was started, as to what prompted Donielle to finally file a report and to point out that she had reported to some official just over three days from the incident which was three days prior to her first statement to police.
 {¶ 70} As the state correctly points out, this is not an Evid.R. 404(B) issue. Rather, the evidence is itself part of the facts of the case. As such, the parole officer, who was an active witness in the foundation of the case, could testify. See State v. Cowans (1999),87 Ohio St.3d 68 (parole officer's testimony is not barred by other acts rule where he was one who conducted search). For both of these reasons, this case is distinguishable from our recent case cited in appellant's reply brief where the probation officer's testimony had nothing to do with the background of the case and where no prior testimony already disclosed the defendant's status as a parolee or probationer. State v.Anderson, 7th Dist. No. 03MA252, 2006-Ohio-4618, ¶ 73-74, 76.
 {¶ 71} Furthermore, the parole officer's act of informing the jury that the rape allegation constituted a parole violation is not itself evidence of an other act because that very rape allegation was the offense at hand and the fact of parole was already properly admitted, as analyzed supra. The fact that Donielle was willing to testify at the violation hearings is not the revelation of an other act either.
 {¶ 72} Contrary to appellant's argument, we cannot say that the background evidence from the parole officer was wholly irrelevant. Nor can we say that the *Page 18 
probative value of this evidence is substantially outweighed by the danger of unfair prejudice. Since the parole officer's testimony was permissible because he was the first investigator and since Donielle's testimony about what appellant told her was permissible, there is no prejudice from these further statements.
 {¶ 73} Moreover, it is not clear that the defense objected to the question and answer concerning the existence of an alleged parole violation. (Tr. 528). Rather, it seems the defense objected to the prior question. (Tr. 527). It is also unclear that the defense objected to the parole officer's testimony that Donielle was willing to testify in parole violation hearings. (Tr. 529). Rather, counsel objected to the next question asking for the details of those hearings.
 {¶ 74} Error may not be predicated upon a ruling which admits evidence unless a substantial right of the party is affected and a timely objection or motion to strike appears of record stating the specific ground of objection, if the specific ground was not apparent from the context. Evid.R. 103(A)(1). Thus, we have waiver problems as well. In any event, the testimony was admissible in this case and/or unfair prejudice is not apparent. This assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER FOUR {¶ 75} Appellant's fourth assignment of error alleges:
 {¶ 76} "THE TRIAL COURT ERRED IN PERMITTING HEARSAY EVIDENCE IN VIOLATION OF THE UNITED STATES CONSTITUTION AMEND. VI AND XIV AND OHIO CONSTITUTION ART. I § 10."
 {¶ 77} Appellant complains that Donielle's testimony on the contents of the telephone call she received two days after the rape constituted inadmissible hearsay. Over defense counsel's objection, Donielle testified that she received a call at work on Saturday from someone named Kim, who claimed to be appellant's parole officer. (Tr. 360). Donielle related that Kim told her that appellant came to the authorities fearing that she was going to report a fallacy. Kim asked her why she was making the story up and why she failed to yell or scream. Donielle testified that Kim told her to stop telling her story. (Tr. 361).
 {¶ 78} Initially, we note that appellant incorrectly states that rulings on hearsay objections are not subject to an abuse of discretion standard of review. They are in fact. State v. Hand, 107 Ohio St.3d 378,2006-Ohio-18, ¶ 92; State v. Dever (1992), 62 Ohio St.3d 401, 404. Appellant also mischaracterizes the nature of the contested *Page 19 
evidence. Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). Hence, not all out of court statements constitute hearsay.
 {¶ 79} "If a statement is not offered to prove its truth but is offered for some other reason such as simply to prove the statement was made, if such fact is relevant, it is not hearsay. Words constituting conduct are not hearsay, e.g., words of a contract, libel, slander, threats and the like." 1980 Staff Note to Evid.R. 801(C).
 {¶ 80} A person's question, such as Kim asking why Donielle was lying or why she did not scream, is not hearsay. See State v. Carter (1995)72 Ohio St.3d 545, 549-550. Furthermore, none of Kim's statements to Donielle were offered to prove the truth of the matter asserted. That is, the content of the call was not offered to show that appellant went to the authorities or that Kim was actually appellant's parole officer. Rather, it was offered to show what triggered Donielle to call the authorities and to provide context for how she finally reported her allegations. See State v. Maurer (1984) 15 Ohio St.3d 239, 262-263
(offered to show motive of witness, not truth of matter asserted). Likewise, contrary to appellant's alternative contention, the contents of the call are not irrelevant. This assignment of error is without merit.
 ASSIGNMENT OF ERROR NUMBER FIVE {¶ 81} Appellant's fifth assignment of error contends:
 {¶ 82} "APPELLANT WAS DENIED DUE PROCESS OF LAW AND A FAIR TRIAL BY REASON OF IMPROPER PROSECUTORIAL ARGUMENT."
 {¶ 83} Upon an argument of prosecutorial misconduct, the reviewing court must determine whether the remarks were improper and if so whether the remarks prejudicially affected the defendant's substantial rights.State v. Tenace, 109 Ohio St.3d 255, 2006-Ohio2417, ¶ 45. The ultimate inquiry is the fairness of the trial, not the culpability of the prosecutor. Id. A trial is not deemed unfair if, in the context of the entire trial, it appears clear beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments. Id. "'[G]iven the myriad [of] safeguards provided to assure a fair trial, and taking into account the reality of the human fallibility of the participants, there can be no such thing as an error-free, perfect trial, and that the Constitution does not guarantee such a trial." State v. Jones (2000), 90 Ohio St.3d 403, 422 (dealing with allegations of prosecutorial misconduct on rebuttal in a capital case). *Page 20 
 {¶ 84} Appellant sets forth various instances of alleged prosecutorial misconduct during only the rebuttal portion of closing arguments by the prosecutor who sat second chair and who had previously advised that he was the supervisor of the criminal division. First, appellant takes issue with the prosecutor's explanation as to why he decided to step in for rebuttal. That is, he stated that he was not going to be there that afternoon because primary counsel (who was a female) could handle the case. (Tr. 572). However, he disclosed that he subsequently decided that he should talk to the men about the mistaken belief in a "no blood/no foul" defense. He urged that the victim need not take a beating to prove rape and "no means no." (Tr. 572-577).
 {¶ 85} Such statement was not misconduct or even prejudicial to appellant merely because it may, in implication, be a bit sexist to the female prosecutor or to males in general. Appellant believes that the mere taking over for rebuttal was an attempt to convey the impression that the senior attorney felt the case was of utmost importance. This may be true. However, we are aware of no rule against such tactic, and appellant does not cite one to us.
 {¶ 86} Appellant then claims that the prosecutor improperly appealed to the jurors' passions by asking, "what do we tell our children, our women, our female children? You got to fetch a beating, you got to risk your life * * *." (Tr. 577). However, such statements are not improper. Further, there is no indication that the statements were so inflammatory that the convictions were the result of passion and prejudice rather than proof of guilt. See State v. Jackson, 107 Ohio St.3d 53,2005-Ohio-5981, ¶ 113.
 {¶ 87} Appellant next contends that the prosecutor improperly expressed personal beliefs. Contrary to appellant's suggestion, the Supreme Court has not stated that prosecutors cannot express personal beliefs in general. Rather, the cases cited by appellant provide only that prosecutors may not express personal beliefs regarding the guilt of the accused or the credibility of a witness. State v. Lott (1990),51 Ohio St.3d 160, 166; State v. Smith (1984), 14 Ohio St. 3d 13, 14. In any event, the above quote is not a personal belief, and appellant does not cite to any other specific instances.
 {¶ 88} Finally, appellant urges that the prosecutor disparaged defense counsel by mentioning that defense counsel's objection threw him off his train of thought. (Tr. *Page 21 
579). However, this was a mere observation and explanation as to why the prosecutor could not remember what he was going to say. It was not an implication that defense counsel's objections were improper. Reading the statement in its context, this situation is wholly distinct from that in the case appellant cites. See State v. Keenan (1993),66 Ohio St.3d 402, 406 (where the state replied to a defense objection by declaring that the state objected to the victim's death and where the state alleged that defense counsel was objecting to cover up the truth). As such, this assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER SIX {¶ 89} Appellant's sixth assignment of error states:
 {¶ 90} "THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR DISCHARGE FOR VIOLATIONS OF SPEEDY TRIAL."
 {¶ 91} Appellant was arrested by the Adult Parole Authority on March 25, 2004 for an alleged parole violation as a result of Donielle's statement to the parole officer. A parole hold was placed upon him on April 7, 2004, after the probable cause hearing on the violation. He was indicted for two counts of rape on June 17, 2004.
 {¶ 92} On July 9, 2004, appellant filed a motion, which the court granted on July 13. Discovery was demanded and supplied on July 26, 2004. A pretrial was held on July 28, after which the defense was ordered to provide copies of some disks to the state within two weeks. At that time, the pretrial was reset for August 13. On that date, the court was unavailable; so, the pretrial was reset for September 1, 2004. At that pretrial, the parties agreed to continue the pretrial and reset the case as a jury trial for September 29, 2004.
 {¶ 93} On the morning of that scheduled trial, appellant filed a speedy trial dismissal motion. He claimed that the time spent in jail since his March 25, 2004 arrest for a parole violation should count toward his time because the rape allegations were the reason for his arrest, and he urged that he is entitled to triple time. The state countered that he is not entitled to triple time due to the parole holder, that there was no "arrest" on this case for purposes of speedy trial until the indictment was served and that even if a single time clock began on the date of arrest, the time still had not yet run.
 {¶ 94} After various continuances and defense counsel's withdrawal, the speedy trial motion was finally heard on April 5, 2005. Leave was then given to *Page 22 
supplement the motion. On May 12, 2005, the court issued its decision denying appellant's dismissal motion. The court found that appellant was arrested for a parole violation by the APA and that a hold was placed upon him thereafter. The court concluded that triple time does not run when a defendant is held on a parole or probation holder.
 {¶ 95} A jury trial was set for May 25, 2005; however, it was rescheduled until June 15 due to the court's jury trial in another criminal case, with two case numbers provided. On the day of the next scheduled trial, the state was granted a continuance until August 22, 2005 over the defendant's objections. The entry refers to the record from the hearing that day for the basis of the continuance.
 {¶ 96} Just before trial, the defense responded to the state's request for discovery and to the state's motion for discovery sanctions. On August 22, 2005, appellant filed a new dismissal motion on speedy trial grounds. This was denied, and the jury trial commenced that day. Upon this procedural history, we apply the following law.
 {¶ 97} The defendant must be brought to trial within two hundred seventy days for a felony. R.C. 2945.71(C)(2). Each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days. R.C. 2945.71(E). Where a defendant is not being held solely on the pending charge, but is being held on a parole or probation holder, triple time does not run. State v. Brown (1992),64 Ohio St.3d 476, 479 (the existence of a valid parole holder prevents application of a triple-count); State v. Martin (1978),56 Ohio St.3d 207, 211 (not held solely on pending charge if also held on parole hold); State v. Davis (June 30, 1999), 7th Dist. No. 98CA97 (a parole hold order prevents the triple count provision of R.C. 2945.71 from applying). Contrary to appellant's suggestion:
 {¶ 98} "The mere fact that [the defendant's] activity was criminal and, therefore, also a violation of his probationary restrictions does not inextricably intertwine these two proceedings as claimed by the [defendant]. The failure to prosecute the [defendant] on these criminal charges would not bar the use of these offenses as the grounds for the revocation of his probation." Martin, 56 Ohio St.3d at 210.
 {¶ 99} "The triple-count provision of the speedy trial statute applies to an accused being held in jail solely on the pending criminal charges. A parole violation is a separate offense." Brown, 64 Ohio St.3d at 479. Thus, appellant's suggestions in *Page 23 
his dismissal motion that he is entitled to triple time are without merit, and, the court properly denied the first dismissal motion.
 {¶ 100} Appellant now offers a speedy trial argument spanning from the day of his arrest on March 25, 2004 through the date that the jury trial actually commenced on August 22, 2005. The state first responds that the time appellant was held solely on the parole violation does not even count as single time because he was not "arrested" on the rape charge until service of his June 17, 2004 indictment. Rather, he was being held solely on the parole violation from March 25, 2004 until service of the indictment. We agree with the state's position.
 {¶ 101} R.C. 2945.71(C)(2) provides that a person against whom a charge of felony is pending shall be brought to trial within two hundred seventy days after the person's arrest. Here, there was no charge of a felony pending until appellant was indicted. There was no arrest of appellant on this rape charge before that time.
 {¶ 102} It is irrelevant that an actual parole hold was not placed on him until April 7, 2004. He was arrested by a parole officer for an alleged parole violation after that parole officer's investigation, and he remained in jail prior to the indictment solely in order to await the parole violation hearing. The hold was placed upon him in anticipation that he would eventually be indicted and possibly attempt to make bond. The evidence established that appellant was being held in jail solely on a pending parole violation. The fact that the parole violation was based upon the same allegations of the later indictment is irrelevant. SeeMartin, 56 Ohio St.3d at 210, quoted above.
 {¶ 103} Thus, we begin our count with the date on which the indictment was served upon appellant. See, e.g., State v. Dillon, 10th Dist. No. 05AP-679, 2006-Ohio-3312, ¶ 33; State v. Galluzzo, 2d Dist. No. 2004CA25,2006-Ohio-309, ¶ 30; State v. Riley, 162 Ohio App.3d 730,2005-Ohio-4337, ¶ 20 (12th Dist.). According to the returned summons, the sheriff received the indictment on June 18 and served it on appellant on June 21, 2004.[1] *Page 24 
 {¶ 104} As to the first arguable tolling event, we note that one could argue that time tolled on June 30, 2004, when appellant asked that the case be continued and rescheduled for a July 28, 2004 pretrial. See July 6, 2004 judgment entry. See, also, R.C. 2945.72(H) (defendant's request for continuance is a tolling event). However, the state does not argue this. Rather, the state finds the first tolling event to be appellant's July 9, 2004 motion for due process materials and to preserve the right to file other motions. Assuming for sake of argument that we ignore the first defense motion for a continuance due to the unreasonably early setting of pretrial and trial, eighteen days would have passed from service of the indictment until this tolling event.
 {¶ 105} The court ruled on the defense's motions on July 13, 2004, lifting the tolling event. Starting the next day, twelve days passed (for a total of thirty days) until July 26, 2004, when the defense filed a discovery demand. Speedy trial time is tolled by any period of delay necessitated by a motion, proceeding, or action made or instituted by the accused. R.C. 2945.72(E). This includes a discovery demand and the reasonable period of responding thereafter. State v. Brown,98 Ohio St. 3d 121, 2002-Ohio-7040, ¶ 18, 23, 26 (discovery demand and motion for bill of particulars are tolling events). However, the state responded to the demand with an information packet that same day. As such, there was only one day of tolling. Contrary to the state's contention, their reciprocal request does not toll the time, and there is no indication that the state was still preparing discovery material for the defense. Thus, time started running again on July 27, 2004.
 {¶ 106} Then, in a July 29, 2004 entry, resulting from the pretrial the day before, the court ordered the defense to provide certain copies of disks to the state within two weeks. The pretrial was reset as a result, which would toll the time as it was a reasonable continuance based upon necessity of the material. R.C. 2945.72(H).
 {¶ 107} The time was tolled until August 13, 2004, the day of the continued pretrial. At that August 13 pretrial, the court continued the pretrial until September 1, 2004 due to the court being unavailable. Appellant contends that the court's entry about being unavailable is insufficient to show the continuance was reasonable because it does not specify why the court was unavailable. However, this is contrary to our holding in State v. Davis (June 30, 1999), 7th Dist. No. 98CA97. See, also, State v. Walter, (Dec. 22, 2000) 5th Dist. No. 00CA43 (finding this reason to be reasonable and sufficient), citing State v.Saffel (1988), 35 Ohio St.3d 90 (noting court *Page 25 
would be out of town during earliest available date after witness's availability); State v. Cadwallader (Mar. 12, 1992), 8th Dist. No. 60006 (unavailability of court sufficient). Time would have tolled during this period. See R.C. 2945.71(H) (reasonable continuance by the court sua sponte is a tolling event).
 {¶ 108} On September 1, the parties agreed to continue the pretrial and reset the case as a jury trial for September 29, 2004. A continuance sought by defense or reasonable continuance sought by the state is a tolling event. See R.C. 2945.71(H). Even if it was not on motion of the defense, since the defense agreed, the continuance is presumptively reasonable. Thus, time tolled from September 2 through September 29. Even if we did not toll the time from July 27 through September 1, 2004 on the court's entry of unavailability and even if we did not toll the time for the resetting of trial on what was claimed to be agreement of the parties, only sixty-four days passed, for a total of ninety-four days until the next undisputed tolling event.
 {¶ 109} That is, appellant filed his unjustified speedy trial motion on September 29, the morning of the jointly agreed upon trial. This undisputedly stopped the running of the clock. See State v.Broughton (1991), 62 Ohio St.3d 253, 262 (speedy trial motion tolls time). See, also, R.C. 2945.71(E). Time remained tolled until the motion was heard. There are no allegations that the time to hear and decide the dismissal motion was unreasonable. Thus, we need not address that matter.
 {¶ 110} Nevertheless, we feel compelled to point out that the repeated rescheduling of the dismissal hearing was caused by tolling events. In fact, the great majority of the delay in hearing the motion was directly attributable to appellant. First, the court reasonably granted leave to the state to file a response. Then, appellant requested a continuance on November 16, 2004. His counsel then failed to appear on November 23, 2004, which caused further rescheduling. Then, he jointly agreed to a continuance until February 15, 2005.
 {¶ 111} In the meantime, on January 18, 2005, defense counsel sought to withdraw based upon appellant's request. See R.C. 2945.72(C) (the time for bringing a defendant to trial is extended by any period of delay necessitated by the defendant's lack of counsel, as long as the delay is not caused by a lack of diligence in providing counsel to an indigent upon his request). Appellant informed the court that he was in the process of obtaining new retained counsel. However, at the February 28, 2005 status hearing, appellant decided he once again needed appointed counsel, which *Page 26 
was immediately provided. The presence of new counsel required resetting of the motion to dismiss hearing. After the hearing, the court reasonably granted time to supplement the motion. In any event, we have digressed as there was no contention on appeal that the time to hold the dismissal hearing or rule on the motion was unreasonable. Thus, we continue from the point of the court's ruling on appellant's first speedy trial motion.
 {¶ 112} The court denied the dismissal motion on May 12, 2005. Even assuming time began running again the next day, only twelve days passed, for an assuming arguendo maximum total of one hundred six days. (We say assuming arguendo because we already held that the unavailability entry was sufficient and the agreement to reschedule was a tolling event.)
 {¶ 113} On May 25, 2005, the court stated that appellant's jury trial was scheduled for that day but the courtroom was unavailable due to a jury trial in another criminal case. The court specifically provided the companion case numbers relevant to that other criminal jury trial. Besides the period of any continuance sought by the defendant, the time tolls for the period of any reasonable continuance granted other than upon the defendant's motion. R.C. 2945.72(H). Thus, a continuance requested by the state or a sua sponte continuance by the court tolls the time where the continued period is not unreasonable based upon the reasons stated in the record. Continuing the trial on the basis stated in the court's entry until June 15, 2005 was not unreasonable, and thus, time was tolled. State v. McCall, 152 Ohio App.3d 377, 2003-Ohio-1603, ¶ 23
(where this court held that setting trial thirty-five days later due to involvement in other criminal trial tolls time).
 {¶ 114} On June 15, 2005, the state asked for a continuance over the objection of the defense. The court granted the continuance and rescheduled the jury trial for August 22, 2005, on which day the trial commenced. A state's continuance tolls the time if it is reasonable. R.C. 2945.72(H). The court's entry specifically pointed to the record for the reasons in support of the continuance. From later filings, it appears the continuance may have been due to the defense's failure to provide certain discovery to the state.
 {¶ 115} The Supreme Court has stated that although the court must put the reasons for continuance into a journal entry when it grants a sua sponte continuance, when a state's request for a continuance is granted, the reasons need merely be in the *Page 27 
record. State v. Myers, 97 Ohio St.3d 335, 2002-Ohio-6658, ¶ 62, distinguishing State v. Mincy (1982), 2 Ohio St.3d 6. We do not have the record of the hearing where the continuance was discussed. Since the hearing is necessary to our review of the crux of appellant's speedy trial argument, he should have ordered it. See App.R. 9. Without it, we must presume the regularity of that proceeding.
 {¶ 116} Even if the state should have ordered it to show us the reasonableness of the continuance and even if we were to then find this continuance unreasonable and count it against the state for an additional sixty-eight days, this only brings the total elapsed days to one hundred seventy-four. In fact, even if we would have counted the time from the day after appellant's arrest on the parole violation against the state and thus added an additional eighty-seven days before service of the indictment, this is still under two hundred seventy days, whether or not we count the time after the state's last continuance against the state. In any case, as set forth above, those pre-indictment days do not count against the state as appellant was solely being held on the allegations of a parole violation and was not jailed on the current offenses.
 {¶ 117} Hence, no matter how we calculate it, after construing every possible argument in favor of appellant, the total time elapsed in no way exceeded two hundred seventy days. For all of the foregoing reasons, appellant's speedy trial rights were not violated.
 ASSIGNMENT OF ERROR NUMBER SEVEN {¶ 118} Appellant' seventh and final assignment of error complains:
 {¶ 119} "APPELLANT WAS DENIED HIS RIGHT TO A FAIR TRIAL * * * AS A RESULT OF THE CUMULATIVE ERROR WHICH OCCURRED THROUGHOUT THE TRIAL."
 {¶ 120} Finally, appellant alleges that cumulative error involving the jury instruction, the prosecutorial misconduct, the hearsay and the other acts evidence deprived him of a fair trial. Cumulative error is a doctrine that can be used to reverse where multiple errors that were individually found to be harmless are found to be so prejudicial that they collectively deprive a defendant of the constitutional right to a fair trial. State v. Garner (1995), 74 Ohio St.3d 49, 64. However, even if there are found to be multiple errors, the sheer weight of numbers does not itself cause prejudice. State v. Bryan, 101 Ohio St.3d 272,2004-Ohio-971, ¶ 211. *Page 28 
 {¶ 121} Here, we cite to our resolution of the relevant assignments of error on the topics now raised. As there were not multiple instances of harmless error, the cumulative error doctrine is inapplicable.Garner, 74 Ohio St.3d at 64. This assignment of error is overruled.
 {¶ 122} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Donofrio, J., and Waite, J., concurs.
[1] As can be seen at the end of our analysis, even if we started with the date the indictment was filed, the result would not change. Moreover, as will be demonstrated below, even if we avoid the most difficult arguments presented by the state and assume only for purposes of argument and efficiency that certain events did not toll the time, the state is still clearly under the two-hundred-seventy-day try-by date. In fact, even if we accepted appellant's argument that at least single time ran from the date of his arrest for the mere parole violation, the clock would not have run. *Page 1