[Cite as *State v. Boyd*, 2023-Ohio-1120.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
BELMONT COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

DONALD THOMAS BOYD,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 21 BE 0048

---

Criminal Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 20 CR 22

**BEFORE:**
Cheryl L. Waite, Carol Ann Robb, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.
Limited Remand.

---

*Atty. J. Kevin Flanagan,* Belmont County Prosecutor and *Atty. Jacob A. Manning,* Assistant Prosecuting Attorney, 52160 National Road, St. Clairsville, Ohio 43950, for Plaintiff-Appellee

*Atty. Brian A. Smith*, Brian A. Smith Law Firm, LLC, 123 South Miller Road, Suite 250, Fairlawn, Ohio 44333, for Defendant-Appellant.

Dated: March 30, 2023

**WAITE, J.**

**{¶1}** Appellant Donald Thomas Boyd appeals an October 14, 2021 judgment entry of the Belmont County Court of Common Pleas convicting him of various crimes. Appellant raises several arguments challenging the joinder of two separate incidents in one trial, the sufficiency of the evidence supporting his convictions, and the imposition of consecutive sentences. Appellant also argues that he received ineffective assistance of counsel. For the reasons that follow, Appellant's arguments are without merit and the judgment of the trial court is affirmed. However, the matter is *sua sponte* remanded for the limited purpose of obtaining a *nunc pro tunc* entry to correctly reflect the indeterminate nature of a portion of Appellant's sentence.

Factual and Procedural History

**{¶2}** This appeal concerns two separate incidents that were combined in a single indictment and corresponding trial. The first occurred on August 2, 2018. On that date, Corporal Jason Schwarck of the Belmont County Sheriff's Department ran a license plate check on a vehicle during his patrol. He learned that the license plate was not registered to the vehicle. He also learned that the plate was registered to a person who had a suspended license and an outstanding arrest warrant. As a result, Corp. Schwarck initiated a traffic stop of the vehicle.

**{¶3}** When Corp. Schwarck confirmed that Appellant, the driver of the vehicle, was the person to whom the plate was registered, he placed Appellant under arrest pursuant to the arrest warrant. Corp. Schwarck located a silver pill container when searching Appellant's person. Inside the container, Corp. Schwarck discovered foil with two pieces of suspected LSD. Appellant admitted that it was LSD. Corp. Schwarck also

found marijuana and other drug paraphernalia, but it does not appear that Appellant was charged with these related offenses. Despite Appellant's arrest in early August of 2018, it does not appear that he was officially charged in this matter until May of 2021. It is unclear why charging in this matter was delayed.

{¶4} The second incident occurred on September 12, 2018. Many of the following facts stem from testimony provided by an accident reconstructionist who conceded that reconstruction is subjective and that another investigator may arrive at a different conclusion. However, it is the only information available, as it does not appear that any eyewitness saw the entire event. Other facts are taken from witnesses, including the parties involved.

{¶5} At the time of the incident, Appellant was under a driver's license suspension. However, he borrowed a white pickup truck from someone in West Virginia. The photographs in evidence depict a two-lane road surrounded on both sides by brush and weeds. The site of the crash itself appears to be located just before a bend in the road.

{¶6} Appellant was driving the borrowed truck on Willow Grove Road in the Village of Neffs, Belmont County. Appellant operated the truck within the posted speed limit. Everett Dean Hartley was driving a grey pickup driving in the opposite direction. The victim, Robert Hartley, sat in the front seat of his brother's truck. Everett is referred to as both Everett and Dean in this record, but his first name will be used, here. The Hartleys were travelling from a convenience store to a job site.

{¶7} Through Appellant's testimony and reconstruction efforts, it appears that Appellant's truck drifted left of center from the right lane and into the opposing lane, then

off the berm and into the brush/weeds. Appellant's vehicle then reentered the road into opposing traffic and struck Everett's truck, causing him to lose control of his vehicle. The impact caused Everett's truck to veer off of the road, where it eventually hit an embankment. Everett's truck apparently came to rest against some object halfway down the embankment.

{¶8} Everett testified that he may have been rendered temporarily unconscious immediately following the impact. When he regained consciousness, he found his brother lying in the backseat. He placed his hand on his brother, who was not responsive. He exited the truck through a window and saw Appellant sitting on a tire that had come off of the borrowed truck. Appellant stated: "Dean [Everett], the reason I hit you, my wheel fell off." (Trial Tr., p. 360.) A significant amount of blood is visible in the truck Appellant was driving, particularly on the deployed airbag. It appears that Appellant suffered some sort of head injury as a result of the incident, however, neither he nor Everett were apparently seriously injured.

{¶9} The crash occurred at approximately 7:45 a.m. A pedestrian in the area called 911 and emergency vehicles arrived fairly quickly. The local fire department arrived first. Ohio State Highway Patrol Trooper Daniel Moran was dispatched to the scene at 7:48 a.m. and arrived a short time thereafter.

{¶10} Captain Chris Brokaw of the Neff Fire Department testified that he saw Everett and Appellant walking in the street when he arrived. (Trial Tr., p. 318.) He observed Appellant's vehicle and noticed that the front passenger's side tire was laying in the road in front of the truck. At the time, Robert was still inside the grey truck. Before he attempted to check on Robert, Captain Brokaw took a hose and put water on the

engine, which appeared to be smoking. He then entered the bed of the truck, reached inside and placed a heart monitor pad on Robert, which showed a "flat line." (Trial Tr., p. 336.) He contacted dispatch, declared Robert dead on arrival, and was instructed to leave the body alone and allow the investigation to proceed. He testified that he complied with those instructions.

{¶11} Mary Mansfield, a firefighter and EMT, testified that she first approached Everett and requested to be allowed to medically treat him, however, he declined treatment until he knew his brother's condition. She then saw Appellant, who appeared to be "staggering a little bit on the roadway, so I grabbed ahold of him and I said, 'Are you okay?' " (Trial Tr., p. 342.) Appellant also initially refused treatment, however, Mansfield persisted. Appellant kept asking her "[d]id someone pass away? Did someone die?" (Trial Tr., p. 343.) She informed him that she did not know and began to address his wounds. As she and Appellant talked, "more and more, I noticed he was kind of like -- just he wasn't all there. His altered mental status started kicking in a little bit more." (Trial Tr., p. 344.) Although she believed he was impaired, she conceded that it was "[v]ery possible" that his behavior was the result of a head injury based on the impact of his head hitting the windshield. (Trial Tr., p. 350.)

{¶12} Trooper Moran testified that he did not expect to find a fatality when he arrived and was surprised when the fire department informed him there had been a death. He learned the name of all parties involved, but did not speak to either Appellant or Everett at the scene because they were being medically treated. He photographed the scene and attempted to trace the path of the vehicles to learn what may have caused the accident. He was told Appellant claimed that mechanical failure had been responsible

for the accident. However, Trooper Moran did not find any evidence that he believed would support that claim. Sgt. Frank Cook later completed the accident reconstruction. In summation, he also could find no evidence to support Appellant's claim of mechanical failure.

{¶13} At some point, Trooper Moran did speak with both Appellant and Everett, who were being treated at two different area hospitals. Trooper Moran first visited Appellant, who was in an emergency room and receiving fluids intravenously. Appellant admitted to Trooper Moran that his driver's license was suspended. Appellant also admitted he had ingested a small amount of marijuana at either 5:00 or 5:30 that morning. He explained that he uses marijuana daily to treat various medical conditions. He denied any other drug use. Trooper Moran placed Appellant under arrest for DUI based on his admission regarding marijuana use. He obtained a urine sample that was taken around 10:00 a.m. Trooper Moran could not state at trial the exact time requirement for obtaining urine samples pursuant to law, but believed that they should be taken within two or three hours following an incident. He conceded that Appellant's test was taken at the outer parameter of the timeline.

{¶14} Appellant's urine sample tested positive for several substances. Kimberly Belvin, a criminalist for the Ohio State Highway Patrol crime lab, provided testimony regarding the legal limits for an OVI and about Appellant's results. First, he tested positive for amphetamine. The per se legal limit for purposes of an OVI is that a subject tests at greater than 500 nanograms per milliliter. Appellant's sample tested at more than 1,000 nanograms per milliliter. Belvin explained that once a sample is found to be more than twice the legal limit (1,000 nanograms for purposes of amphetamine), testing is cut off at

that point. Second, Appellant's sample tested positive for methamphetamine. Belvin stated that the legal limit for this drug is greater than 500 nanograms per milliliter. Appellant tested at more than 1,000 nanograms per milliliter. Third, Appellant's sample tested positive for marijuana. Belvin testified that the legal limit for marijuana is 35 nanograms per milliliter and testing is cut off at 200 nanograms per milliliter. Appellant's sample tested positive for greater than 200 nanograms per milliliter.

{¶15} Trooper Moran also interviewed Everett, who was being seen at a separate hospital. Everett denied any drug use. During questioning, Trooper Moran obtained a urine sample. Although the state attempted to have this testimony excluded at trial, the court permitted the defense to disclose the result of Everett's urine sample, which tested positive for both cocaine and glucose. The legal limit pertaining to cocaine for purposes of an OVI is 150 nanograms per milliliter; Everett's sample tested 213.94 nanograms per milliliter +/- 19.25 nanograms per milliliter. According to Everett, it had been several days since he had used cocaine. Everett's sample also tested positive for glucose, which usually triggers the necessity of a second alcohol screening test to be completed a week later. For some reason, Everett's second round of testing did not occur. Everett pleaded guilty to an OVI charge and served an unspecified term of incarceration. He was released at some point prior to trial in this case.

{¶16} Trooper Moran later returned to the scene and searched Appellant's vehicle, where he located a glass smoking pipe with a residue he believed to be methamphetamine. Testing later revealed that the substance was, in fact, methamphetamine. The pipe was found on the floor of the front passenger's seat next to two baggies, one containing a substance that appeared to be marijuana and the other

containing seeds.  Testing confirmed the first substance was marijuana, but the seeds were not tested.

{¶17}  On February 6, 2019, Appellant was charged with two counts of aggravated vehicular manslaughter by means of a Rule 4 Complaint.  On February 28, 2019, Appellant failed to appear at arraignment and an arrest warrant was issued.  Appellant was subsequently located and was arraigned, and was released on a recognizance bond. On March 5, 2020, Appellant was indicted on two counts of vehicular manslaughter.

{¶18}  Due to COVID-19 and the continuances it caused, the procedural history after this point is somewhat unclear.  It appears that these delays allowed the state more time to obtain testing results, which then led to additional charges.

{¶19}  On May 6, 2021, in what appears to be a superseding indictment, Appellant was indicted on both the earlier charges and several new charges:  one count of aggravated vehicular manslaughter, a felony of the second degree in violation of R.C. 2903.06(A)(1)(a), (B)(2)(a); one count of aggravated vehicular manslaughter, a felony of the second degree in violation of R.C. 2903.06(A)(1)(a), (B)(2)(b)(1); one count of operating a vehicle while under the influence of a controlled substance ("OVI"), a misdemeanor of the first degree in violation of R.C. 4511.19 (A)(1), (J)(I), (G)(1)(a); one count of operating a vehicle while under the influence of a controlled substance ("OVI"), a misdemeanor of the first degree in violation of R.C. 4511.19 (A)(1), (J)(IX), (G)(1)(a); one count of operating a vehicle while under the influence of a controlled substance ("OVI"), a misdemeanor of the first degree in violation of R.C. 4511.19 (A)(1), (J)(VIII), (G)(1)(a); one count of aggravated possession of drugs, a felony of the fifth degree in

violation of R.C. 2925.11(A), (C)(1)(a); and one count of possession of LSD, a felony of the fifth degree in violation of R.C. 2925.11(A), (C)(5)(a).

**{¶20}** For the sake of clarity as it relates to this appeal, we note that count seven pertains to the traffic stop that occurred on August 2, 2018. Counts one through six relate to the traffic accident that occurred on September 12, 2018. All counts were included in the same indictment, no motion was made to sever these counts, and the trial court did not sever them *sua sponte.*

**{¶21}** During trial, the state presented the following witnesses: Kimberly Belvin, (Ohio State Highway Patrol Crime Lab), Jennifer Acurio (Ohio Bureau of Criminal Investigations, forensic scientist), Captain Chris Brokaw (Neff Fire Department), Mary Mansfield (Neff Fire Department firefighter/EMT), Everett Hartley (victim's brother), Jeffrey Turnau (Ohio State Highway Patrol Crime Lab), Trooper Daniel Moran (Ohio State Highway Patrol), Frank J. Cook (Ohio State Highway Patrol accident reconstructionist), and Corporal Jason Schwarck (Belmont County Sheriff's Office). After a three-day trial, the jury convicted Appellant of all offenses.

**{¶22}** At the sentencing hearing, the court imposed the following: eleven to sixteen and one-half years of incarceration on count two; six months each for counts three, four, and five; and one year for counts six and seven. The court merged counts one and two. Counts three, four, and five were ordered to run concurrently and counts six and seven consecutively to count two. The total aggregate sentence then, was thirteen years to eighteen and one-half years. However, although not raised by the parties, the court's judgment entry failed to note that count two involved an indeterminate

sentence. Instead, the judgment entry imposed an eleven year determinate sentence on count two.

**{¶23}** Appellant filed a motion for a delayed appeal in this matter, which was granted. Appellant also filed a motion to suspend execution of his sentence pending appeal in both the trial court and this Court. Both motions were denied.

## ASSIGNMENT OF ERROR NO. 1

The trial court abused its discretion in engaging in improper joinder and trying the offenses contained in the Indictment together, prejudicing Appellant and violating Appellant's right to a fair trial and to Due Process under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution.

## ASSIGNMENT OF ERROR NO. 3

The failure of Appellant's trial counsel to object to testimony relating to the August 2, 2018 incident constituted ineffective assistance of counsel, in violation of Appellant's right to counsel under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

## ASSIGNMENT OF ERROR NO. 4

The failure of Appellant's trial counsel to request relief from prejudicial joinder and severance of Count Seven from Counts One through Six of the Indictment constituted ineffective assistance of counsel, in violation of

Appellant's right to counsel under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

{¶24} In each of these assignments of error, Appellant contends that it was error to join the charges from the two separate incidents in one trial. Because both involved drugs and traffic violations, Appellant complains that the jury could not be reasonably expected to separate the evidence. He contends that his admission to LSD possession in count seven likely portrayed him as a drug user to the jury, damaging his argument that the drugs found in the truck might not have belonged to him, particularly since he had borrowed it from someone else whose criminal record is unknown. Appellant argues that, but for the failure to sever count seven, Corp. Schwarck's testimony concerning his prior possession of LSD during his traffic stop would not have been admissible in the accident case as a prior bad act.

{¶25} In response, the state highlights that because no request to sever was made and no objection raised, Appellant is limited to a plain error review. Regardless, the state argues that the evidence pertaining to each offense was simple and direct, negating the need to conduct the "other acts" analysis. As to Appellant's ineffective assistance argument, the state contends that motion would not have been successful and Appellant is unable to demonstrate prejudice in any event.

{¶26} Ohio law favors joining multiple criminal offenses in a single trial. *State v. Harrison*, 7th Dist. Jefferson No. 19 JE 0009, 2020-Ohio-3624, ¶ 55, citing *State v. Franklin*, 62 Ohio St.3d 118, 122, 580 N.E.2d 1 (1991), citing *State v. Lott*, 51 Ohio St.3d 160, 163, 555 N.E.2d 293 (1990). "[J]oinder and the avoidance of multiple trials is favored

for many reasons, among which are conserving time and expense, diminishing the inconvenience to witnesses and minimizing the possibility of incongruous results in successive trials before different juries." *State v. Torres*, 66 Ohio St.2d 340, 343, 421 N.E.2d 1288 (1981).

**{¶27}** Crim.R. 8(A) provides:

Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct.

**{¶28}** A defendant may move to sever trial of joined offenses pursuant to Crim.R. 14 if he can establish prejudice. *Lott, supra*, at 163. In relevant part, Crim.R. 14 provides that: "[i]f it appears that a defendant or the state is prejudiced by * * * such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires."

**{¶29}** The state may counter a claim of prejudice in one of two ways. The state may demonstrate that the evidence presented at trial for each offense was simple and direct. *State v. Moore*, 2013-Ohio-1435, 990 N.E.2d 625, ¶ 23 (7th Dist.), citing *State v. Coley*, 93 Ohio St.3d at 259, 754 N.E.2d 1129 (2001). Failing that, the state must show that all of the evidence presented at the combined trial would have been admissible in

each case if tried separately. *Id.* If the state can demonstrate that the evidence is simple and direct, then it is not required to prove the stricter admissibility test. *State v. Harris*, 7th Dist. Mahoning No. 13 MA 37, 2015-Ohio-2686, ¶ 29, citing *State v. Johnson*, 88 Ohio St.3d 95, 109, 723 N.E.2d 1054 (2000). Evidence is simple and direct when it is apparent that the jury was not confused about which evidence proved which act. *Harrison* at ¶ 60, citing *State v. Harris*, 7th Dist. Mahoning No. 13 MA 37, 2015-Ohio-2686, ¶ 30; *Coley* at 259.

**{¶30}** The test for an ineffective assistance of counsel claim is two-part: whether trial counsel's performance was deficient and, if so, whether the deficiency resulted in prejudice. *State v. White*, 7th Dist. Jefferson No. 13 JE 33, 2014-Ohio-4153, ¶ 18, citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Williams*, 99 Ohio St.3d 493, 2003-Ohio-4396, 794 N.E.2d 27, ¶ 107. In order to prove prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *State v. Lyons*, 7th Dist. Belmont No. 14 BE 28, 2015-Ohio-3325, ¶ 11, citing *Strickland* at 694. The appellant must affirmatively prove the alleged prejudice occurred. *Id.* at 693.

**{¶31}** As both are necessary, if one prong of the *Strickland* test is not met, an appellate court need not address the remaining prong. *Id.* at 697. The appellant bears the burden of proof on the issue of counsel's effectiveness, and in Ohio, a licensed attorney is presumed competent. *State v. Carter*, 7th Dist. Columbiana No. 2000-CO-32,

2001 WL 741571 (June 29, 2001), citing *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999).

**{¶32}** Because defense counsel did not request a hearing on the issue of joinder, we are without evidence as to whether the issue was contested at any point or whether the parties agreed to joinder of the offenses. Appellant's first argument, however, is that the trial court erred in failing to *sua sponte* sever the seventh charge.

**{¶33}** Appellant is correct that at least some prejudice may have occurred as a result of joinder in this matter. His admission to possession of LSD at his traffic stop could reasonably have been expected to hinder his ability to present certain defenses to the charges resulting from the traffic accident. The evidence may have portrayed him to the jury as a person who abuses illegal drugs while operating a motor vehicle. That said, a showing of possible prejudice is not necessarily enough to overcome joinder.

**{¶34}** We note that the state occasionally treated the two incidents as separate events and sometimes indicated that they were intertwined. For example, during the state's opening, the prosecutor stated:

> This case will be presented to you in two parts and will in some ways mesh together, because what I just told you about was the September 12, 2018, incident. But you're also going to hear of an incident on August 2, 2018. You will hear about that for two reasons. No. 1, you will hear from the deputy that stopped [Appellant] on August 2, 2018, and he will tell you that [Appellant] was under a suspension on that day, about 40 days, if you will, prior to this incident. And he will also tell you that he seized LSD from

[Appellant]. And you will look at that case, as well, throughout the course of this.

(Trial, Tr., p. 234.)

{¶35} While we acknowledge that Crim.R. 8(A) requires some sort of link between joined offenses, it appears from the opening statement and throughout the trial that the state attempted to conflate the link between the two incidents. However, it is clear from this record that while two incidents both involved operation of a motor vehicle and illegal drugs, they occurred more than a month apart, involved different narcotics, and one involved mere possession of a drug while the other involved driving under the influence of drugs. The only identical fact was that both occurred while Appellant was driving despite a suspended license. Hence, while it appears that these two incidents are similar in nature, to "mesh" the incidents together as the state indicated would contradict the standard requiring the evidence for each must be simple and direct. Our review of this record reveals that even though the state may have stretched its application of Crim.R. 8(A) in the opening statement, there is no question that the evidence in support of each of these cases was simple and direct.

{¶36} Contrary to Appellant's assertion at oral argument, the long established standard in Ohio in order for joinder to be appropriate requires the state to prove only one of the following tests after a show of possible prejudice: that the evidence is simple and direct for each charged crime, or that the evidence in one would have otherwise been admissible in the other. Here, count seven involved only one witness and involved only the possession of LSD discovered during a traffic stop. On the other hand, counts one through six involved the testimony of various first responders, an accident

reconstructionist, lab technicians, and a police officer, none of whom were involved with or testified in the first case. The bulk of testimony on counts one through six addressed testing results of a urine sample that did not test positive for the single drug involved in count seven.

**{¶37}** For these reasons, the trial court's failure to *sua sponte* sever the charges was not error. For the same reasons, trial counsel was not ineffective for failing to raise the issue. As such, Appellant's first, third, and fourth assignments of error are without merit and are overruled.

ASSIGNMENT OF ERROR NO. 2

Appellant's convictions were against the manifest weight of the evidence.

**{¶38}** Appellant argues that his aggravated vehicular manslaughter conviction is against the manifest weight of the evidence. Appellant specifically questions whether the state demonstrated that impairment was the proximate cause of the crash. Appellant also attacks the testimony of Sgt. Cook, who wrote a report containing a reconstruction of the accident. He takes issue with the testimony of Trooper Moran, who testified that he obtained Appellant's urine sample at the outer limits of the timeline. Appellant also highlights Trooper Moran's concession that Appellant was receiving unknown medications intravenously at the time he collected the sample.

**{¶39}** The state argues that multiple witnesses testified Appellant appeared to be in an impaired state shortly after the accident. While the state concedes that the urine sample was taken after the time limitations, there is no evidence in the record that it occurred after the timeline for collection had expired. The state also relies on Trooper

Moran's testimony that none of the officers at the scene could find any evidence to corroborate Appellant's claim that mechanical failure caused the accident to support its theory of impairment as the cause of this accident.

{¶40} Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." (Emphasis deleted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). It is not a question of mathematics, but depends on the effect of the evidence in inducing belief. *Id.* Weight of the evidence involves the state's burden of persuasion. *Id.* at 390, 678 N.E.2d 541 (Cook, J. concurring). The appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 220, citing *Thompkins* at 387, 678 N.E.2d 541. This discretionary power of the appellate court to reverse a conviction is to be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. *Id.*

{¶41} "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 118, quoting *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The trier of fact is in the best position to weigh the evidence and judge the witnesses' credibility by observing their gestures, voice inflections, and demeanor. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). The jurors are free to believe some, all, or none of each witness'

testimony, and they may separate the credible parts of the testimony from the incredible parts. *State v. Barnhart*, 7th Dist. Jefferson No. 09 JE 15, 2010-Ohio-3282, ¶ 42, citing *State v. Mastel*, 26 Ohio St.2d 170, 176, 270 N.E.2d 650 (1971). When there are two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, we will not choose which one is more credible. *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist.1999).

**{¶42}** Appellant limits his arguments to the events of September 12, 2018, involving counts one through six. It is somewhat unclear whether Appellant challenges his conviction on all six counts, as he devotes most of his argument toward the vehicular homicide charges and only briefly addresses an argument in regard to his urine sample, relevant to his OVI convictions. Appellant makes no reference to the possession of drugs charge (count six), which stems from the discovery of marijuana in his truck after the accident, nor does he address his conviction stemming from the traffic stop incident. Thus, we will review only the aggravated vehicular homicide and OVI convictions.

**{¶43}** Aggravated vehicular manslaughter is described within R.C. 2903.06. Appellant was charged under a specific subsection of this statute, R.C. 2903.06(A)(1)(a), which provides:

(A) No person, while operating or participating in the operation of a motor vehicle, motorcycle, snowmobile, locomotive, watercraft, or aircraft, shall cause the death of another or the unlawful termination of another's pregnancy in any of the following ways:

Case No. 21 BE 0048

(1)(a) As the proximate result of committing a violation of division (A) of section 4511.19 of the Revised Code or of a substantially equivalent municipal ordinance;

* * *

(2) In one of the following ways:

(a) Recklessly;

(b) As the proximate result of committing, while operating or participating in the operation of a motor vehicle or motorcycle in a construction zone, a reckless operation offense, provided that this division applies only if the person whose death is caused or whose pregnancy is unlawfully terminated is in the construction zone at the time of the offender's commission of the reckless operation offense in the construction zone and does not apply as described in division (F) of this section.

(3) In one of the following ways:

(a) Negligently;

(b) As the proximate result of committing, while operating or participating in the operation of a motor vehicle or motorcycle in a construction zone, a speeding offense, provided that this division applies only if the person whose death is caused or whose pregnancy is unlawfully terminated is in the construction zone at the time of the offender's commission of the

speeding offense in the construction zone and does not apply as described in division (F) of this section.

(4) As the proximate result of committing a violation of any provision of any section contained in Title XLV of the Revised Code that is a minor misdemeanor or of a municipal ordinance that, regardless of the penalty set by ordinance for the violation, is substantially equivalent to any provision of any section contained in Title XLV of the Revised Code that is a minor misdemeanor.

**{¶44}** Appellant asserts that the state failed to demonstrate his alleged impairment was the proximate cause of the accident. Within this argument, Appellant attacks the investigation as a whole and, more specifically, in regard to his claims of mechanical failure and the collection of his urine sample. He also contends that Everett's state of impairment should have been addressed as a contributing factor of the accident.

**{¶45}** We note at the outset that in his arguments, Appellant fails to consider that once the state proved Appellant's urine sample contained levels of prohibited substance in excess of any acceptable levels pursuant to the OVI statues, and proved that an accident did, in fact, occur, the state likely established his guilt as a matter of law. In other words, the problem with Appellant's arguments regarding his allegation of mechanical failure and his dissatisfaction with the police investigation is that even if he is correct that a mechanical failure occurred, the evidence still demonstrated that Appellant operated the vehicle that lost control and caused an accident resulting in a death.

**{¶46}** Even if mechanical failure was some sort of contributing factor, the evidence proves that Appellant had drugs in his system at levels well over the legal limit. Thus, there is no way for him to disprove that his impairment was the cause or the major contributing factor. At best, Appellant has presented the possibility there may have been two additional, equally viable, causes of the accident, neither of which can be definitely proved or disproved. The standard of manifest weight review is clear. We may not choose between two equally viable versions of an event and determine which is more credible. Again, credibility is a matter for the trier of fact. The jurors in this matter were well aware of Appellant's claims that the truck sustained a mechanical failure which caused him to lose control, despite his argument that the police investigation was deficient. The jurors either disbelieved Appellant, or determined that Appellant's impairment and inability to maintain control was the root cause of the accident and the victim's death despite any alleged mechanical failure. As Appellant concedes that he lost control, travelled into oncoming traffic, and crashed into Everett's truck, any impairment on Everett's part was irrelevant. Appellant's concession on these facts operates as an admission as to cause.

**{¶47}** Appellant also challenges the value of his urine sample based on the time it was collected and the nature of his treatment at the emergency room. At trial, his counsel elicited testimony from Trooper Moran, who admitted that he collected Appellant's urine sample at the outer limits of the collection period. Defense counsel then entered the following colloquy with Trooper Moran:

**Q**. What is the timeframe for -- or what was the timeframe, actually, for the collection of blood then?

**A**. To tell you right now, I could not honestly tell you.

**Q**. Could you tell us what it was for urine?

**A**. It was either two or three hours.

(Trial Tr., pp. 499-500.)

**{¶48}** Defense counsel then elicited testimony from Trooper Moran that he was dispatched to the scene at 7:48 a.m. and did not collect the sample until 10:30 a.m., almost three hours after the accident. This fact was known to the jury.

**{¶49}** Despite the collection time of the urine sample, it contained methamphetamine, amphetamine, and marijuana at levels more than double the levels allowed by law for purposes of an OVI. It is entirely probable that had his sample been more promptly taken, it would have contained even higher levels. Thus, Appellant's arguments in this regard are puzzling, at best. We also note that Appellant admitted to marijuana use during his interrogation. This alone, significantly limits his ability to challenge his corresponding OVI conviction.

**{¶50}** Appellant posits that he was receiving an unknown substance intravenously at the time his sample was taken, which could have affected his sample. However, it does not seem likely that Appellant could have been receiving any medication during his treatment that could have caused him to test positive for these particular substances. Regardless, as this was not addressed at trial, Appellant's argument here amounts to speculation on his part.

{¶51} For these reasons, sufficient and credible evidence supports the Appellant's convictions. As such, Appellant's second assignment of error is without merit and is overruled.

## ASSIGNMENT OF ERROR NO. 5

The failure of Appellant's trial counsel, to promptly object to Trooper Daniel Moran's testimony regarding the accident, without the trooper being qualified as an expert witness in accident reconstruction, constituted ineffective assistance of counsel, in violation of Appellant's right to counsel under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

{¶52} Appellant argues that his counsel's representation was ineffective based on his counsel's failure to object to testimony from Trooper Moran. Appellant explains that Trooper Moran testified regarding technical issues pertaining to accident reconstruction. Trooper Moran stated that when he undertook his reconstruction of this accident, he found no mechanical problem on the part of Appellant's borrowed truck that could have been the cause of the accident. Although Appellant concedes that his counsel did object to this testimony, he did not do so until several minutes into Trooper Moran's testimony. Appellant claims that the damage to his defense caused by Trooper Moran had already been done by that time. Appellant believes the error is compounded by that fact that Trooper Moran is the only witness who was present at the scene of the accident to have testified about these issues.

**{¶53}** At trial, the state asked Trooper Moran about Appellant's claims that mechanical failure, particularly a tire "locking up," caused the accident. For ease of understanding, all relevant testimony will be cited below.

[Trooper Moran] In this particular case, off to the side of the road, there were weeds. And from -- it's easy to see from -- you can tell if a tire is in motion or if a tire is locked up. If a tire is in motion and it goes through weeds, you are just going to see basically the weeds bent over and you'll be able to just tell what direction the vehicle was going. If the vehicle has a locked up tire, obviously you're going to see the weeds either pulled up or you're going to see dirt from where the actual--– the locked tire is skidding across the grass and the weeds.

Now, once the vehicle gets into the weeds, it is -- people describe it as being on ice. It's harder to stop. But in this case, looking at the mark from the white pickup truck [belonging to Appellant], it was free rolling. The weeds were just smooshed down. There was nothing indicating that there was any type of braking or a vehicle tire being locked up, or it would be skidding.

(Trial Tr., pp. 412-413.)

**{¶54}** Later, Trooper Moran was asked about Appellant's claims that the truck "wiggled back and forth" and "[t]hen it locked up." (Trial Tr., p. 427) The following testimony was given during the state's direct examination of Trooper Moran:

**Q** How about, based on your training and experience, the wiggle of the tire? Does that also leave a mark behind?

**A** With my training and experience with other crashes that have had tires that have either gone flat or, you know, fallen off, you're going to see some type of movement from that tire. You're going to see lug nuts that may have fallen off. You're going to see --

[Appellant's Trial Counsel]: I'm going to object at this point. This witness hasn't been qualified as an expert regarding accident reconstruction or any of the signs thereof. I think that we've gone beyond his personal experience. We're now delving into an area where he would need to be qualified as an expert.

THE COURT: Sustained.

[PROSECUTOR]: Okay.

Will the Court permit him, then, to testify to his personal experience?

THE COURT: I will let him to [sic] testify as to his experience.

[PROSECUTOR]: Okay.

**Q.** Based on your experience, when -- and again, we will hear from Sergeant Cook later on, but based on your experience, when you see this wiggle in or on a -- or from a tire, does it leave marks on the roadway?

**A**. Based on my training and experience, not all the time, but there are times where yes, there will be a marking or a squiggle mark on the roadway.

(Trial Tr., pp. 429-431.)

**{¶55}** Appellant contends that his counsel should have objected much earlier in Trooper Moran's testimony. However, the record demonstrates that counsel's cross-examination caused Trooper Moran to walk back his statement that tire issues will always cause a mark on the road and to soften his assertion, clarifying that this is not always the case. Even so, it was made clear to the jury that Trooper Moran was not qualified as an expert witness.

**{¶56}** Later in Trooper Moran's testimony, it became apparent he had limited knowledge of the mechanical nature of vehicles. When asked about certain aspects of a tire and the surrounding mechanics, he admitted that he is not a mechanic. He responded to a mechanical question by stating "I'm not sure exactly what the term is. It's an auto part. What it is, I don't know." (Trial Tr., p. 504.) He was then asked what occurs when an upper ball joint is loose or breaks, and he replied that he had no understanding of this process. Thus, the jury understood that Trooper Moran was not a mechanical expert and the state did not attempt to qualify him as an accident reconstruction expert. As such, the timing of trial counsel's objection does not constitute ineffective assistance of counsel. Accordingly, Appellant's fifth assignment of error is without merit and is overruled.

<u>ASSIGNMENT OF ERROR NO. 6</u>

The cumulative errors of Appellant's trial counsel constituted ineffective assistance of counsel in violation of Appellant's right to counsel under the

<u>Case No. 21 BE 0048</u>

Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

**{¶57}** Appellant asserts that the cumulative effect of counsel's alleged errors caused the state's case to appear more credible than it was and also violated his constitutional right to counsel and due process. Appellant emphasizes that each of his asserted errors affected his ability to present a mechanical failure defense and bolstered the state's theory of Appellant's impairment.

**{¶58}** The state contends that none of Appellant's arguments rise to the level of error. However, even if errors were made, Appellant is unable to show that those errors affected the outcome of the trial.

**{¶59}** "Cumulative error exists only where the harmless errors during trial actually 'deprive[d] a defendant of the constitutional right to a fair trial.'" *State v. Dawson*, 2017-Ohio-2957, 91 N.E.3d 140, ¶ 54 (7th Dist.), citing *State v. DeMarco*, 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987), paragraph two of the syllabus. In Ohio, it is generally recognized that "given the myriad [of] safeguards provided to assure a fair trial, and taking into account the reality of the human fallibility of the participants, there can be no such thing as an error-free, perfect trial, and that the Constitution does not guarantee such a trial." *State v. Rupp*, 7th Dist. No. 05 MA 166, 2007-Ohio-1561, ¶ 83, quoting *State v. Jones*, 90 Ohio St.3d 403, 422, 739 N.E.2d 300 (2000).

**{¶60}** Based on our analysis of Appellant's arguments, he has not shown any error, and so clearly cannot demonstrate cumulative error. As such, Appellant's sixth assignment of error is without merit and is overruled.

ASSIGNMENT OF ERROR NO. 7

The trial court's sentence of Appellant was contrary to law for failing to make the required findings, pursuant to R.C. 2929.14(C)(4), to impose consecutive sentences.

{¶61} Appellant argues that in imposing sentence, the court failed to make any findings under R.C. 2914.14(C)(4) subsections (a), (b), or (c). He also contends that there is no connection between the two separate incidents that were joined for trial, thus negating the court's finding of a course of conduct. He further argues that the court's sole statement as to his criminal history was that it was "quite lengthy," which was not enough on which to base the consecutive sentences.

{¶62} Pursuant to R.C. 2929.14(C)(4), before a trial court can impose consecutive sentences on a defendant, the court must find:

[T]hat the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b)  At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶63}**  A trial court must make the consecutive sentence findings at the sentencing hearing and must additionally incorporate the findings into the sentencing entry.  *State v. Williams*, 2015-Ohio-4100, 43 N.E.3d 797, 806, ¶ 33-34 (7th Dist.), citing *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37.  The court is not required to state reasons in support nor is it required to use any "magic" or "talismanic" words, so long as it is apparent that the court conducted the proper analysis.  *Williams* at ¶ 34, citing *State v. Jones*, 7th Dist. Mahoning No. 13 MA 101, 2014-Ohio-2248, ¶ 6; *State v. Verity*, 7th Dist. Mahoning No. 12 MA 139, 2013-Ohio-1158, ¶ 28-29.

**{¶64}**  The Ohio Supreme Court has recently readdressed consecutive sentence review.  *State v. Gwynne*, -- Ohio St. 3d --, 2022-Ohio-4607, -- N.E.3d --.  As to the standard of review, the *Gwynne* Court held that:

The evidentiary standard for *changing* the trial court's order of consecutive sentences is not deference to the trial court; the evidentiary standard is that the appellate court, upon a de novo review of the record and the findings,

Case No. 21 BE 0048

has a "firm belief" or "conviction" that the findings—the criteria mandated by the legislature to be met before the exception to concurrent sentences can apply—are not supported by the evidence in the record.

*Id.* at ¶ 23, citing *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 22; see also *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954).

R.C. 2953.08(G)(2) does not require the high level of deference that comes with an abuse-of-discretion standard of review. This type of deference would permit a court of appeals to modify a defendant's sentence or to vacate the sentence and remand only when no sound reasoning process can be said to support the decision, or where the trial court exhibited an arbitrary or unconscionable attitude when it imposed the consecutive sentences.

*Gwynne* at ¶ 19, citing *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990); *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87, 482 N.E.2d 1248 (1985).

{¶65} The Court then provided "practical guidance on consecutive-sentence review." *Id.* at ¶ 24. The court explained that a consecutive sentence review is two-fold: first, whether the record contains the requisite R.C. 2929.14(C) findings. *Id.* at ¶ 25. Second, "[i]f the appellate court determines that the R.C. 2929.14(C)(4) consecutive-sentence findings have been made, the appellate court may then determine whether the record clearly and convincingly supports those findings." *Id.* at ¶ 26. "The point here is that if even one of the consecutive-sentence findings is found not to be supported by the

record under the clear-and-convincing standard provided by R.C. 2953.08(G)(2), then the trial court's order of consecutive sentences must be either modified or vacated by the appellate court." *Id.,* citing R.C. 2953.08(G)(2).

**{¶66}** "When reviewing the record under the clear-and-convincing standard, the first core requirement is that there be some evidentiary support in the record for the consecutive-sentence findings that the trial court made." *Id.* at ¶ 28. "The second requirement is that whatever evidentiary basis there is, that it be adequate to fully support the trial court's consecutive-sentence findings. This requires the appellate court to focus on both the quantity and quality of the evidence in the record that either supports or contradicts the consecutive-sentence findings." *Id.* at ¶ 29. We note that *Gwynne* was released after briefing concluded in this matter, thus the parties do not cite *Gwynne* or apply its law.

**{¶67}** At the sentencing hearing, the trial court found "[c]onsecutive service is necessary to protect the public from further crime and to punish the offender, and consecutive sentences are not disproportionate to the seriousness of the offender's conduct, and to the danger the offender poses to the public." (Sentencing Hrg. Tr., p. 20.) The court also found that Appellant's criminal history was extensive and demonstrated the need to protect the public from future crimes. The court relied heavily on the fact that Appellant "should never have been in that truck or that car, that vehicle, that afternoon. Forgetting his operation, the way he operated the vehicle, forgetting that, he should not have been in the vehicle driving it." (Sentencing Hrg. Tr., pp. 20-21.)

**{¶68}** On appeal, Appellant complains that the only record of his criminal history is a single line in the transcript stating that his history is quite lengthy. However, the court

Case No. 21 BE 0048

had ordered a presentencing investigation ("PSI"), which details Appellant's criminal history in both Ohio and California. The PSI reveals thirty-three prior criminal charges, a significant amount of which involve conduct similar to the conduct giving rise to the instant charges. We note that other charges were discussed at the sentencing hearing. However, after Appellant's counsel informed the court that those charges had been expunged, the court expressly stated it would not consider them. This refutes Appellant's assertion that the trial court did not understand Appellant's criminal history.

{¶69} There is a plethora of evidence to support the court's conclusion as to Appellant's criminal history and the need to protect society from future crimes. The court emphasized that the underlying conduct, driving under the influence, has been a recurrent theme for Appellant as evidenced by the prior charges and convictions. The harm is particularly serious in this matter as it resulted in a death. This record contains evidence to support the court's imposition of consecutive sentences. We note that only counts two, six, and seven were ordered to run consecutively. Counts three, four, and five (the OVI convictions) were ordered to run concurrently.

{¶70} However, although not raised by the parties, we note that the court made a clerical error in its judgment entry. At the sentencing hearing, the court properly ordered an indeterminate sentence of eleven to sixteen and one-half years on count two. In its judgment entry, the court simply ordered a sentence of eleven years, with no mention of the maximum term. As the court properly announced the sentence at the hearing, we remand the matter for the sole purpose of issuing a *nunc pro tunc* entry to correct Appellant's sentence in this regard.

**{¶71}** Appellant's seventh assignment of error is without merit and is overruled. However, the matter is remanded for a *nunc pro tunc* entry concerning Appellant's sentence as to count two.

## Conclusion

**{¶72}** Appellant raises several arguments essentially challenging the joinder of two separate incidents in one trial, ineffective assistance of counsel, sufficiency of the evidence supporting his convictions, and imposition of consecutive sentences. For the reasons provided, Appellant's arguments are without merit and the judgment of the trial court is affirmed. However, the matter is *sua sponte* remanded to the trial court for the limited purpose of obtaining a *nunc pro tunc* entry to correct Appellant's sentence on count two reflecting the indeterminate nature of this sentence.

Robb, J., concurs.

Hanni, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Belmont County, Ohio, is affirmed. However, we hereby *sua sponte* remand this matter to the trial court for the limited purpose of obtaining a *nunc pro tunc* entry to correctly reflect the indeterminate nature of a portion of Appellant's sentence according to law and consistent with this Court's Opinion. Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

### NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**